# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GOLO, LLC, | |
| Plaintiff, | C.A. No.  20-667-RGA-SRF |
| v. | **REDACTED VERSION** |
| GOLI NUTRITION INC., a Canadian Corporation, GOLI NUTRITION INC., a Delaware Corporation, and MICHAEL BITENSKY, | |
| Defendants. | |
| GOLI NUTRITION INC., a Canadian Corporation, GOLI NUTRITION INC., a Delaware Corporation and MICHAEL BITENSKY, | |
| Counter-Plaintiffs, | |
| v. | |
| GOLO, LLC and CHRISTOPHER LUNDIN, | |
| Counter-Defendants. | |

**OPENING BRIEF IN SUPPORT OF PLAINTIFF GOLO, LLC'S
MOTION TO EXCLUDE TESTIMONY OF DEFENDANT
<u>GOLI NUTRITION INC.'S EXPERT WITNESSES</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

LEGAL STANDARD ......................................................................................... 1

ARGUMENT ....................................................................................................... 2

I.     Keith Ugone ............................................................................................. 2

     A.     Ugone's Opinions Are Not Proper Expert Testimony ............................ 2

     B.     Ugone's Opinions Improperly Include Legal Opinions ......................... 4

II.     Sameer Somal ......................................................................................... 5

     A.     Somal Is Not an Expert in Digital Marketing. ...................................... 6

     B.     Somal Makes Unfounded Insinuations That Would Mislead a Jury. ...... 6

     C.     Somal's Report Parrots the Opinions of Counsel. .................................. 7

     D.     Somal's Opinion Lacks a Methodology, Reliable Basis, or Sufficient Facts. ........ 8

III.     Carlo Salvatore Contorregi and Lawrence Cheskin ................................. 9

     A.     Contorregi and Cheskin Do Not Have Expertise to Opine on Counsel-Fed Testimony Regarding the Law or Regulations. ........................... 9

     B.     Contorregi and Cheskin's Substantiation Opinions Lack Reliability. ................ 13

IV.     Hal Poret ................................................................................................ 16

     A.     Poret's Newly-Run Surveys Constitute Improper Rebuttal Material. ................ 16

     B.     Poret's Surveys Are Otherwise Unreliable. ......................................... 18

V.     Sean O'Keefe ......................................................................................... 19

CONCLUSION ................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                       **Page(s)**

*Advanced Med. Optics, Inc. v. Alcon, Inc.*,
    2005 WL 782809 (D. Del. Apr. 7, 2005) ..................................................................12, 13, 15

*Allscripts Healthcare, LLC v. Andor Health, LLC*,
    2022 WL 3021560 (D. Del. July 29, 2022) ...........................................................................2

*Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*,
    2017 WL 3528606 (D. Del. Aug. 16, 2017) (Andrews, J.) .......................................5, 7, 8, 12

*AstraZeneca LP v. Tap Pharm. Prods., Inc.*,
    444 F. Supp. 2d 278 (D. Del. 2006) ......................................................................................4

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006) ...................................................................................................5

*Crowley v. Chait*,
    322 F. Supp. 2d 530 (D.N.J. 2004) ......................................................................................11

*eBay Inc., v. MercExchange, LLC*,
    547 U.S. 388 (2006) ......................................................................................................2, 4, 5

*Fancaster, Inc. v. Comcast Corp.*,
    832 F. Supp. 2d 380 (D.N.J. 2011) ......................................................................................18

*Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*,
    2018 WL 10472794 (N.D. Cal. Sept. 25, 2018) .....................................................................5

*Flickinger v. Toys R Us-Delaware, Inc.*,
    492 F. App'x 217 (3d Cir. 2012) ...........................................................................................5

*Godreau-Rivera v. Coloplast Corp.*,
    598 F. Supp. 3d 196 (D. Del. 2022) .....................................................................................13

*Juice Ent., LLC v. Live Nation Ent., Inc.*,
    2022 WL 2803169 (D.N.J. July 18, 2022) ...........................................................................18

*King–Indiana Forge, Inc. v. Millennium Forge, Inc.*,
    2009 WL 3187685 (S.D. Ind. Sept. 29, 2009) .......................................................................2

*Liqwd, Inc. v. L'Oréal USA, Inc.*,
    2019 WL 8014103 (D. Del. June 25, 2019) ...........................................................................2

*Lord Abbett Mun. Income Fund, Inc. v. Asami*,
    2014 WL 3417941 (N.D. Cal. July 11, 2014) ........................................................................2

*Maker's Mark Distillery, Inc. v. Spalding Grp., Inc.*,
2022 WL 17824427 (W.D. Ky. Dec. 20, 2022).................................................17, 18

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
2013 WL 2178047 (D. Del. May 20, 2013)....................................................12, 13

*Maui Jim, Inc. v. SmartBuy Guru Enterps.*,
2019 WL 5577165 (N.D. Ill. Oct. 29, 2019)........................................................18

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
559 F.2d 894 (3d. Cir. 1977)........................................................................16, 17

*Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Tr.*, 70 F. Supp. 3d 628
(D. Del. 2014) ..............................................................................................5

*Praxair, Inc. v. ATMI, Inc.*,
231 F.R.D. 457 (D. Del. 2005), *rev'd on other grounds*, 543 F.3d 1306 (Fed.
Cir. 2008)......................................................................................................18

*Rosen v. Ciba-Geigy Corp.*,
78 F.3d 316 (7th Cir. 1996) ..........................................................................20

*Sardis v. Overhead Door Corp.*,
10 F.4th 268 (4th Cir. 2021) ...........................................................................1

*Sinomax USA, Inc. v. Am. Signature Inc.*,
2022 WL 7180339 (S.D. Ohio Sept. 30, 2022) ...............................................17

*Sonos, Inc. v. D & M Holdings Inc.*,
297 F. Supp. 3d 501 (D. Del. 2017)..............................................................2, 4

*Sprint Commc'ns Co. v. Cequel Commc'ns, LLC*,
2022 WL 619834 (D. Del. Feb. 4, 2022) (Andrews, J.) ....................................1, 15

*Starter Corp. v. Converse, Inc.*,
170 F.3d 286 (2d Cir. 1999)...........................................................................19

*Stein v. Foamex Int'l, Inc.*,
2001 WL 936566 (E.D. Pa. Aug. 15, 2001) ....................................................11

*Waymo LLC v. Uber Techs., Inc.*,
2017 WL 6887043 (N.D. Cal. Nov. 14, 2017) ...........................................3, 4, 7

*Withrow v. Spears*,
967 F. Supp. 2d 982 (D. Del. 2013).............................................................17, 20

**Statutes**

21 U.S.C. § 321(g)(1)(B) ...................................................................................10

iv

**Rules**

Fed. R. Evid. 702 .................................................................................................................1

**Other Authorities**

Comm. on Rules of Prac. & Proc. Agenda Book (June 7, 2022)......................................................1

Jerre B. Swan, *Likelihood-of-Confusion Surveys*, Trademark and Deceptive
    Advertising Surveys: Law, Science, and Design, 2d ed. 2022 (American Bar
    Association) ...........................................................................................................19

Shari Seidman Diamond, *Reference Guide on Survey Research*, Reference
    Manual on Scientific Evidence 3d ed. 2011 (Nat'l Res. Council)...........................................19

GOLO, LLC ("GOLO") hereby submits this Opening Brief in Support of its Motion to Exclude the Testimony of several of Goli Nutrition Inc.'s ("Goli") designated expert witnesses.

## INTRODUCTION

This matter involves a trademark and false advertising dispute between competitors GOLO and Goli. During expert discovery, the parties served twenty (20) expert reports covering a range of topics relevant to the trademark and false advertising dispute. However, Goli produced several experts whose opinions lack expertise and are plagued with errors rendering them unreliable. Thus, for the reasons set forth below, this Court should exclude the expert testimony of Keith Ugone, Sameer Somal, Carlo Salvatore Contoreggi, Lawrence Cheskin, Hal Poret, and Sean O'Keefe.

## LEGAL STANDARD

"Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Sprint Commc'ns Co. v. Cequel Commc'ns, LLC*, 2022 WL 619834, at *2 (D. Del. Feb. 4, 2022) (Andrews, J.). *"*Qualification refers to the requirement that the witness possess specialized expertise." *Id.* Reliability means the testimony "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'…. [T]he reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." *Id.* Finally, "expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Id.*

As of June 2022, the Judicial Conference has unanimously approved amendments to Rule 702 that confirm the proponent must prove by a "preponderance of the evidence" that the expert opinion is admissible and reflects a reliable application of methods to the facts of the case. Comm. on Rules of Prac. & Proc. Ag. Book (June 7, 2022) at 30, 51, 870-73; *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 284 (4th Cir. 2021) ("Consistent with … existing law" and the "pending rule," "we confirm … the indispensable nature of district courts' Rule 702 gatekeeping function.").

# ARGUMENT

## I.    Keith Ugone

Keith Ugone, Goli's damages expert, merely summarizes assumptions, contentions, and documents provided by counsel, and then offers a legal conclusion on why an injunction is appropriate under *eBay Inc., v. MercExchange, LLC*, 547 U.S. 388 (2006). Ex. 30, Ugone Rpt. This improper expert opinion should be excluded.

### A.    Ugone's Opinions Are Not Proper Expert Testimony.

Courts routinely exclude purported expert opinion that merely summarizes facts or documents while parroting counsel's argument or interpretation of the evidence. *Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 521 (D. Del. 2017) ("unhelpful restatements of the facts as the expert sees them are inadmissible" (cleaned up)); *see also Liqwd, Inc. v. L'Oréal USA, Inc.*, 2019 WL 8014103, at *5 (D. Del. June 25, 2019) (striking expert testimony because "the Court will not permit [the expert] to summarize witness testimony just for the sake of summarizing it or offering inappropriate opinions"); *Lord Abbett Mun. Income Fund, Inc. v. Asami*, 2014 WL 3417941, at *13 n.8 (N.D. Cal. July 11, 2014) (expert testimony that "merely summarizes the record evidence and gratuitously interprets it" is improper); *King–Indiana Forge, Inc. v. Millennium Forge, Inc.*, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009) (opinions that "parrot" information are excluded); *Allscripts Healthcare, LLC v. Andor Health, LLC*, 2022 WL 3021560, at *1 (D. Del. July 29, 2022) (precluding "opinions cloaking as lawyer advocacy").

There are two compelling reasons for this rule. First, "[w]hen a factual issue is 'equally within the competence of the jurors to understand and decide,' expert testimony is not helpful to the jury and, therefore, not admissible." *Sonos,* 297 F. Supp. 3d at 521 (citation omitted). Second, unless the expert applies specialized knowledge, then "the expert is at best, offering a gratuitous opinion, and at worst is exerting undue influence on the jury." *Liqwd*, 2019 WL 8014103, at *5.

Experts should not "serve as a mouthpiece for arguments that [a party's] lawyers can make," or "pile on a misleading facade of expertise" in interpreting evidence that "can speak for itself." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 6887043, at *5 (N.D. Cal. Nov. 14, 2017).

Here, Ugone's opening report largely just recites his "understanding" of Goli's contentions and allegations, which he purports to support by summarizing nontechnical materials, such as witness deposition testimony, emails and internal documents, and statements on websites. *E.g.*, Ex. 30, Ugone Rpt. ¶¶ 1-3, 4-6, 8, 20, 20, 23-28, 30-38, 42-52, 56-67, 73-78, 81, 84, 93, 97.[1] For example, much of his testimony parrots Goli's theory that GOLO purportedly rebranded its products to mimic Goli's. Yet Ugone—a damages expert—admitted at deposition that he is not an expert on marketing, advertising, branding, packaging, or labeling, Ex. 32, Ugone Dep. 98:7-24, and that he is *not* "opining on the consumer perception" of GOLO's new packaging compared to Goli's, nor on consumer perception of *any* GOLO marketing, *id.* at 90:5-12, 91:16-19.

Ugone also asserts that Goli only competes in the health and wellness market and not as a weight loss product. Ex. 30, Ugone Rpt. ¶ 74. Ugone admitted his view is not based on independent research but just his "observation of the documentary evidence in the case," which "appears to be, from my perspective, you know, health and welfare – health and wellness type marketing." Ex. 32, Ugone Dep. 107:1-108:13.[2] When asked whether he was an expert in the health and wellness market, Ugone responded, "No. I'm an economist and damage quantifier." *Id.* at 90:20-21.

Such testimony is plainly improper. Ugone's summaries of the alleged facts are not based

---

[1] Exhibit 31 is a copy of the Ugone Report, where GOLO has highlighted every statement that includes the qualifying phrase "I understand," or that otherwise is based on the allegations or contentions of Goli or Ugone's mere summary of documents. As Ugone admitted, when his report uses the phrase "I understand," it means the statement is an "assumption" he received from counsel or another source and is not his "independent opinion." Ex. 32, Ugone Dep. 25:7-15, 45:1-11.

[2] Even in reviewing the evidence, Ugone decided to ignore a Goli Management Presentation reflecting that 77% of consumers use Goli for weight management. Ex. 38, at GOLI 0115880.

on any technical expertise or specialized knowledge and thus do not assist the trier of fact or the

Court. *See Sonos*, 297 F. Supp. 3d at 521 (excluding expert who merely provided "summaries of

[the] evidence" in opining the defendant copied plaintiff's patent designs). Instead, Ugone's report

is pure "mouthpiece" testimony, where Goli's counsel is trying to launder their arguments through

the façade of expert testimony. *Waymo*, 2017 WL 6887043, at *5.[3]

### B.    Ugone's Opinions Improperly Include Legal Opinions.

Ugone's Report also opines that a permanent injunction should be granted and that the four

factors enumerated in *eBay Inc.,* 547 U.S. 388 have been met. He opines:

- "Evaluation of the *eBay* Factors": "Absent a permanent injunction, Goli ... likely will suffer: (a) irreparable economic injury; (b) harm for which available monetary damages would be inadequate; and (c) hardships that outweigh the hardships on GOLO, .... [T]he public interest would be served ...." Ex. 30, Ugone Rpt. ¶ 54.

- "The economic evidence summarized above indicates that Goli ... is likely to suffer *substantial and irreparable harm* …." *Id.* ¶ 82 (emphasis added).

- "The above considerations provide economic evidence that there is not an adequate remedy available *at law* to fully compensate Goli ... for GOLO's misrepresentations." *Id.* ¶ 86 (emphasis added).

- "The above considerations provide economic justification for the conclusion that the significant harm faced by Goli ... *in the absence of an injunction* outweighs the economic harm that an injunction would cause GOLO, if any." *Id.* ¶ 90 (emphasis added).

- "The above considerations indicate that from an economic perspective, the public interest *would be served should a permanent injunction be issued* to prevent GOLO's ongoing allegedly false advertising. *Id.* ¶ 96 (emphasis added).

Ugone's analysis of the *eBay* factors leading to his opinion that injunctive relief is

---

[3] Moreover, to the extent Ugone is opining on GOLO's motivations or intent (*e.g.*, that it rebranded in response to the Court's preliminary injunction order), such testimony is also improper. *AstraZeneca LP v. Tap Pharm. Prods., Inc.*, 444 F. Supp. 2d 278, 293 (D. Del. 2006) (Expert witnesses are not "permitted to testify ... regarding [the defendant's] intent, motive, or state of mind, or evidence by which such state of mind may be inferred").

appropriate is nothing more than improper legal opinion. Ugone's opinion on the injunctive relief factors reads in large part like a brief from counsel, or the opinion of a judge.

Courts regularly exclude expert testimony when the opinion includes improper legal opinion. Ugone opines at length that the *eBay* factors are met, but "[a]n expert witness is prohibited from rendering a legal opinion." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006); *Penn Mut. Life Ins. Co. v. Norma Espinosa 2007-1 Ins. Tr.*, 70 F. Supp. 3d 628, 635 (D. Del. 2014) ("[The expert's] report is improper legal opinion" and "does not meet the standard for reliable expert testimony"). This division is important, lest Ugone "usurp[]" this Court's role by "explain[ing] the law." *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, 2017 WL 3528606, at *6, *9 (D. Del. Aug. 16, 2017) (Andrews, J.) ("To the extent [expert] attempts to explain the legality of [issue], that testimony is excluded."); *Flickinger v. Toys R Us-Delaware, Inc.*, 492 F. App'x 217, 224 (3d Cir. 2012) (affirming decision to prohibit expert use of legal terms of art that "courts commonly hold cannot be the subject of expert testimony").

Indeed, Ugone has previously been excluded for offering legal opinions. *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, 2018 WL 10472794, at *3 (N.D. Cal. Sept. 25, 2018) ("[Ugone's] report focuses on whether an individualized inquiry is required .... But whether an individualized inquiry is necessary ... is a legal conclusion, and Dr. Ugone cannot give his opinion as to legal conclusions."). For this reason, Ugone's opening report and testimony should further be excluded.

## II.    Sameer Somal

Sameer Somal, Goli's purported digital marketing expert, opines that Goli has a stronger "digital reputation" and that GOLO has "taken proactive steps" to mimic Goli's branding so as to "benefit" from Goli's "reputation" and to "falsely suggest the parties are competitors." Ex. 25, Somal Rpt. ¶ 8. Somal lacks expertise to make these opinions, which make unfounded insinuations,

improperly parrot the opinions of counsel, and lack a methodology as well as a reliable basis.

### A.    Somal Is Not an Expert in Digital Marketing.

Somal's background, education, and training is entirely in the world of finance, particularly financial planning and a few marketing courses in undergrad that he could not recall. He has never taken graduate level courses in, held an advanced degree, or published in the field of marketing. Ex. 26, Somal Dep. at 19:3-20:13, 23:17-26:12. The basis of Somal's purported expertise in digital marketing appears to come entirely from his self-employed activities. But while he holds himself out as a digital marketing expert, Somal's report and opinions are riddled with basic errors about digital marketing tools that an expert in his field simply would not make. To list a few, (1) Somal opines that ███████████████████████████ but seemed unaware until DeRosia's rebuttal that ███████████ had been defunct for almost a year, rendering it unusable and obsolete, *id.* at 194:4-195:16; Ex. 15, DeRosia Rebuttal ¶ 69 n.28; and (2) he misunderstands how to implement negative keywords. *Id.* at ¶¶ 28–32. A qualified expert would never have made these basic errors and to have done so indicates he lacks expertise. Because his knowledge of the field is tenuous, his opinion would not be helpful and may mislead a jury.

### B.    Somal Makes Unfounded Insinuations That Would Mislead a Jury.

Somal also makes several unfounded allegations about GOLO's actions and intent. Most notably, Somal identified a coupon aggregation website containing a coupon for Goli that had a link for GOLO in it. Somal speculates, without evidence, that "[i]n my opinion, these coordinated linking activities would be done by a GOLO employee or vendor" because "GOLO is *intentionally* attempting to falsely create an association." Ex. 25, Somal Rpt. ¶ 123. This is an absurd claim. The coupon website that Somal identified has over 1.3 million webpages on it and has coupons for thousands of products ranging from AAA batteries to Zzzquil. Ex. 15, DeRosia Rebuttal. ¶ 130 & App.C. The Goli coupon was up for merely 4 months. *Id.* ¶ 132. Somal's speculation that some

unnamed GOLO employee created a massive website promoting thousands of products and maintained it for several years for the purposes of redirecting a handful of customers to its own website for a couple of months is nonsense. Somal knows he has no basis to make this claim. He admitted he has seen no documents or testimony supporting these allegations. Ex. 25, Somal Rpt. ¶ 123; Ex. 26, Somal Dep. at 307:11-22, 311:19-24. Rather, he simply offers the bare opinion that he does not believe it is an "accident." Ex. 26, Somal Dep. at 307:23-310:8. Experts are not permitted to opine on intent nor are they permitted to speculate. *Am. Cruise Lines, Inc.*, 2017 WL 3528606, at *7; *infra,* at 4 n.3. Here Somal does both, and his prejudicial "opinions" would force GOLO to waste valuable trial time rebutting incendiary accusations with no factual basis.

C.    **Somal's Report Parrots the Opinions of Counsel.**

Somal also includes several "opinions" that simply parrot pet points of counsel. For example, Somal opines that GOLO shifted its branding after this Court's preliminary injunction decision to look more like Goli's and points to GOLO's revised bottle packaging as proof. Ex. 25, Somal Rpt. ¶¶ 18-20. However, Somal was not aware that GOLO had ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████. Ex. 26, Somal Dep. at 146:13-160:8, Exs. 27, 28, Somal Dep. Exs. 9 and 10. A one-sided recitation of Goli's arguments is not within the purview of expert testimony, as "[t]here is no reason for [Somal] to serve as a mouthpiece for arguments that [Goli's] lawyers can make." *Waymo*, 2017 WL 6887043, at *5. Moreover, Somal admitted his only basis to opine on similarities of the bottles is effectively his personal opinion that it is "obvious." Ex. 26, Somal Dep. at 157:21-158:15. His personal lay opinion based on a biased presentation of the record is not helpful to the trier of fact.

Somal also claims a Goli employee told him Goli was not aware that Goli was running paid advertisements on the GOLO keywords, and that although they have stopped it now, a purported

"glitch" was why Amazon still showed Goli paid ads when customers searched for GOLO. *Id.* at 295:19-298:3. Somal admitted he had no factual basis for this other than what he was told by Goli employees, which he was simply repeating. *Id.* What Goli knew and when are factual matters in dispute, and it would be prejudicial to have these assertions repeated at trial with the veneer of expertise, when the fact witness can and should be called to speak for themselves. *Am. Cruise Lines, Inc.*, 2017 WL 3528606, at *4 ("[The] expert report is nothing more than a recitation of facts paired with bare assertions.").

> **D.    Somal's Opinion Lacks a Methodology, Reliable Basis, or Sufficient Facts.**

Finally, Somal's opinion overall lacks a methodology, reliable basis, or sufficient facts or data. Somal opines that Goli has a "better digital reputation" than GOLO. Yet, he admitted that whether it is unusual for companies to change marketing in response to competitors is "out of the scope" of "[his] expertise." Ex. 26, Somal Dep. at 143:18–144:2; 163:8-14. Somal also testified that he plans to assert the parties do not compete. *Id.* at 130:20-131:12. However, he admitted he did not analyze price points, forms, advertising channels, sales channels, or category placement, and he had never seen internal Goli documents on why customers purchase Goli. *Id.* at 131:9-136:15. His "opinion" on competition is impermissible *ipse dixit*.

Somal's opinion that Goli has a "better digital reputation" is based on metrics that are either irrelevant to the question or anecdotal. He points to sheer numbers of Facebook or Instagram followers, yet his own marketing materials state that the relevant metric is *not* number of followers *but* engagement, which he did not analyze. *Id.* at 225:3-232:10. He also analyzed which parties' website has more backlinks but his own marketing materials explain it is quality over quantity with backlinks. *Id.* at 200:2-204:23. In essence, he presents metrics under the guise of expertise without doing any analysis to make those metrics fit the question at hand.

Finally, Somal's opening report points to a single post allegedly calling GOLO a scam. At

his deposition, he claimed he saw further such posts but did not disclose any methodology or list of platforms nor quantified the posts. *Id.* at 336:12-338:22. He simply asserts there is a "digital narrative" for this claim. In response to a subpoena, he produced screenshots purporting to show more examples, yet admitted he did not consider them when forming his opinions. *Id.* at 358:21-359:21. This last ditch effort to save thin and unsupported opinions should not be allowed.

### III.     Carlo Salvatore Contorregi and Lawrence Cheskin

Both Carlo Salvatore Contorregi and Lawrence Cheskin are Goli experts who provide opinions on the science, federal regulations, and law to make their conclusion that GOLO's claims are unsubstantiated. But their opinions on the regulations and the law both came from counsel, are not their work or opinions, and fall outside the scope of their expertise. And their opinions on the substantiation of GOLO's claims are unreliable because they failed to apply the totality of the evidence standard; considered Release in isolation; and ignored relevant studies. Their opinions should accordingly be excluded in full. Because Contorregi and Cheskin's opinions have much overlap, and because their deficiencies are largely the same, this brief addresses them together.

### A.     Contorregi and Cheskin Do Not Have Expertise to Opine on Counsel-Fed Testimony Regarding the Law or Regulations.

As an initial matter, Contoreggi and Cheskin's opinions on the regulations and law came from counsel, are not their work or opinions, and fall outside the scope of their expertise.

**First,** both Contorregi and Cheskin opine on the standards to substantiate marketing claims, including "establishment claims" and structure/function claims. Ex. 12, Contorregi Rpt. ¶¶ 10-14 ("Evidentiary Standards to Substantiate Marketing Claims"); Ex. 9, Cheskin Rpt. ¶¶ 17-21 (same). But as GOLO's expert Daniel Fabricant, who is President and CEO of the Natural Products Association and former Director of the Division of Dietary Supplement Programs at the FDA, explained, the standards Contorregi and Cheskin use are incorrect. Ex. 16, Fabricant Rpt. at 5-10.

And both admitted they did not have expertise to opine on such standards in any event.

Specifically, **Contorregi** admitted: (1) the documents he relied on were provided by counsel; (2) he does not use the word structure/function in clinical practice and has never taught a class or written an article on structure/function claims; (3) he is not an expert on the FDA definition of structure/function; (4) the first time he saw the structure/function claim guidance was when it was provided by counsel; (5) he has never taught a class or written an article on substantiation for dietary supplements; (6) he is not an expert on substantiation for dietary supplement claims; and (7) he is not an expert in disclosure requirements under FTC rules and does not know if his opinion on testimonials is consistent with FTC guidelines. Ex. 14, Contorregi Dep. at 29-36, 301:2-302:2.

Contorregi also explained his view that GOLO's claims regarding insulin resistance are disease claims under the FDCA. Ex. 12, Contorregi Rpt. ¶¶ 14, 19-41, 44-58. Setting aside the fact that these arguments are preempted,[4] Contorregi has no expertise to opine on this. In his deposition, Contorregi did not know what 21 U.S.C. § 321(g)(1)(B) was, despite having cited it in his report to say that "the FDA considers that" a "dietary supplement" should be "regulated as a drug if it is marketed as intended for use in the cure, mitigation, treatment, or prevention of disease." *Id.* ¶ 14 n.5; Contorregi admitted the citation was provided by counsel, that he is not sure what it is, and that he had not read it. Ex. 14, Contorregi Dep. at 31:21-32:11. Similarly, Contorregi testified that the FDA/FTC warning letters that he cited in his report (footnote 6) were provided by counsel, and he had never seen the documents before this case. *Id.* at 32:14-33:9.

**Cheskin** similarly admitted the standards came from counsel and are outside the scope of his expertise. Ex. 11, Cheskin Dep. at 127:10-18 ("Q. In … section III of the Evidentiary Standards to Substantiate Marketing Claims, you're not an expert on that topic at all, correct? A. Correct.");

---

[4] *See* GOLO's Motion for Summary Judgment ("MSJ") at Section II.

*id.* at 136:1-6 (admitting FTC and FDA framework were provided by DLA and that he is not an expert). Indeed, Cheskin testified that DLA lawyers provided him with the first draft of his report and rebuttal. *Id.* at 11:1-12:1, 342:8-343:11. DLA also provided Cheskin with the citations, some of which Cheskin did not even check the original source for. *Id.* at 13:11-14:1. As for the case cites in his report, Cheskin confirmed they were provided by counsel and that he did not read the cases. *Id.* at 120:3-123:12. *Cf. Crowley v. Chait*, 322 F. Supp. 2d 530, 543 (D.N.J. 2004) (counsel may not draft report without prior "substantive input" from expert); *Stein v. Foamex Int'l, Inc.*, 2001 WL 936566, at *5 (E.D. Pa. Aug. 15, 2001) (the rules do not permit "blanket adoption of reports prepared by counsel"). Moreover, during his deposition, Cheskin confirmed he is not a lawyer; and not an expert on legal requirements, FDA regulations or the "evidentiary standards for marketing claims." Ex. 11, Cheskin Dep. at 103:8-106:20.[5]

Cheskin also confirmed that (1) he was "educated on" establishment claims "by counsel" and "the legal framework" for "[his] opinion" came from DLA; (2) he had not learned the term "establishment claim" in medical school, does not use it in clinical practice, and had not learned it *until this case*; and (3) he is "not an expert in it." *Id.* at 108:16-110:12, 112:2-8, 114:14-115:18, 117:13-119:7. Instead, he denied that he was offering expert testimony on the definition of or the standard of evidence required for an establishment claim. *Id.* at 119:8-120:2. As for his opinions on structure/function claims and disease claims,[6] Cheskin admitted in his deposition that the legal distinction between structure/function claims and disease claims is (1) not something he deals with in his clinical practice; (2) not something that he has written about or teaches; and importantly,

---

[5] Cheskin also admitted he is not an expert in marketing, advertising, consumer behavior, or consumer perception. Ex. 11, Cheskin Dep. at 104:8-105:12.

[6] Cheskin's arguments that certain claims by GOLO are disease claims under FDA regulations, *e.g.*, Ex. 11, Cheskin Dep. at 233:14-238:4, 499:8-18, are preempted. *See* MSJ at Section II.

(3) is not something he is an expert in. *Id.* at 126:5-127:9. Cheskin also admitted his opinions on testimonials were based only on his views, and that he is not an expert in consumer perception nor is he actually offering that any consumer was misled by GOLO's testimonials. *Id.* at 401:2-403:9.

**Second**, just before Cheskin's March 23, 2023 deposition and Contorregi's March 24, 2023 deposition, Goli served on March 22 and 23 "supplemental" expert reports,[7] for both Cheskin and Contorregi, which do little more than summarize documents from the Federal Trade Commission ("FTC") and the ████████████████████████████████████. Ex. 13, Contorregi Supp. Rpt.; Ex. 10, Cheskin Supp. Rpt.; *cf. Am. Cruise Lines, Inc.*, 2017 WL 3528606, at *4 ("[The] expert report is nothing more than a recitation of facts paired with bare assertions."). Both proffered experts admitted they did not write the supplemental reports and did not have expertise to be opining on the materials contained in them. For example, *Contorregi* admitted that: (1) he did not write all of his supplemental report; (2) he has "never in [his] career worked with correspondence between investigations with the FTC or the ████████ ████ (3) he did not review every document, just the "titles" and "comments"; (4) he was not aware of who wrote the ████████ materials; (5) the FTC took no action against GOLO; and (6) the ████████████████████████████████████████████████████████████ Ex. 14, Contorregi Dep at 302:17-308:18. Similarly, *Cheskin* admitted the first draft supplemental report came from DLA. Ex. 11, Cheskin Dep. at 453:13-454:10. Cheskin also admitted he is not an expert on the regulatory context of the FTC or ████████ documents. *Id.* 455:13-456:13.

Based on these admissions, Contorregi and Cheskin cannot opine on FDA and FTC standards. *Advanced Med. Optics, Inc. v. Alcon, Inc.*, 2005 WL 782809, at *11 (D. Del. Apr. 7,

---

[7] The late production of the supplemental reports is another basis for excluding them. *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2013 WL 2178047, at *12 (D. Del. May 20, 2013), *report and recommendation adopted in part, rejected in part*, 62 F. Supp. 3d 368 (D. Del. 2014).

2005) ("[Expert] cannot disclaim expertise in an area and then opin[e] on it."); *Masimo Corp.*, 2013 WL 2178047, at *7–8 (party "precluded from offering [expert] testimony or opinion" concerning "FDA approval standards" when expert "repeatedly state[d] that he is unfamiliar with tests implemented by the FDA"); *Godreau-Rivera v. Coloplast Corp.*, 598 F. Supp. 3d 196, 212 (D. Del. 2022) (expert was "not qualified to render opinions about ... FDA's position.").

**B.**     **Contorregi and Cheskin's Substantiation Opinions Lack Reliability.**

Contoreggi and Cheskin's opinions also warrant exclusion because they lack reliability. They assert GOLO's claims are false, Ex. 12, Contorregi Rpt. ¶¶ 59-76; Ex. 9, Cheskin Rpt. ¶¶ 25-82, but they (1) failed to apply the totality of the evidence standard; (2) ignored the GOLO meal plan and considered Release in isolation; and (3) ignored relevant studies. Ex. 17, Merenstein Rpt.

**First,** both experts failed to apply the totality of the evidence standard. Ex. 12, Contorregi Rpt. Section III; Ex. 9, Cheskin Rpt. Section III, ¶ 37; Fabricant Rpt. at 5–7. ***Contorregi*** confirmed: "in section III of [his] expert report," that "information about what evidence is required to substantiate marketing claims was provided to [him] by counsel" and that was the "framework" for evidence "needed to substantiate marketing claims that [he] applied to the rest of his report." Ex. 14, Contorregi Dep. at 35:6-17. Contorregi also admitted that when he makes judgments in his own clinical practice, he "re[lies] on the totality of scientific evidence," *id.* at 252:21-255:20, which is something he did not do here. Similarly, ***Cheskin*** admitted that his opinion was that only a double-blind, placebo-controlled clinical trial was sufficient to substantiate claims, and therefore he did not consider or weigh open-label studies and observational studies. Ex. 11, Cheskin Dep. at 144:13-147:21. But he also admitted that "DLA Piper delivered [that] framework," *id.* at 148:7-21, and that he actually does not apply the "double-blind, placebo-controlled, randomized clinical trial [framework] for all of [his] clinical decisions." *Id.* at 149:7-16. Instead, Cheskin admitted that he actually applies the totality of evidence standard in his clinical practice. *Id.* at 159:19-160:18.

**Second**, Release is sold with the meal plan yet both experts ignored the meal plan and considered Release in isolation. ***Contorregi*** admitted that he was not "asked to analyze the GOLO meal plan as part of [his] expert testimony." Ex. 14, Contorregi Dep. at 76:18-21; *see also id.* at 179:17-180:1 ("I did not comment on the diet[,] … exercise or behavioral recommendations"). Nonetheless, Contorregi testified he looked at the GOLO meal plan after he submitted his report, and found the "GOLO meal plan is a reasonable approach to weight loss" *Id.* at 78:12-79:13; *see also id.* at 83:4-87:8 (discussing other benefits of the meal plan, including cardiovascular, immune health, and weight loss benefits); *id.* at 123:12-127:14 (Contorregi discussing the benefits of the entire GOLO program, including energy and metabolism benefits). Contorregi also admitted that he "do[esn't] comment on the merit of the entire plan at all." *Id.* at 202:3-203:4.

Similarly, ***Cheskin*** said his opinion is limited to Release and his view that it does not have certain health benefits. Ex. 11, Cheskin Dep. at 502:2-506:10. But Cheskin admitted that GOLO does not sell Release as a stand-alone dietary supplement and that it comes with a meal plan, as well as behavioral and exercise recommendations. *Id.* at 175:4-180:17. Cheskin also testified that GOLO's products, including the meal plan and behavioral components were consistent with what he promotes in practice and other diets he has seen in the marketplace, and do provide weight loss benefits. *Id.* at 78:11-86:1, 91:12-20, 157:14-20. He also testified about the numerous health benefits of losing weight, including immune and insulin resistance benefits. *Id.* at 94:5-96:20, 157:21-158:20. In fact, Cheskin wrote a book about losing weight and he testified that many of his recommendations in that book mirrored the GOLO for Life Plan. *Id.* at 222:19-230:21.

**Third**, both experts ignored relevant studies. ***Contorregi*** looked only at ingredient studies, and inexplicably, looked at only 7 of the 10 ingredients in Release and ignored the Buynak and MNI studies. Indeed, Contorregi admitted in his deposition that he did not analyze the Buynak or

14

MNI studies in his report. Ex. 14, Contorregi Dep. at 71:17-73:2, 188:6-12 (admitting he did not discuss, cite or disclose Buynak studies);[8] *id.* at 180:12-181:5 (admitting he did not "analyze any of the studies on the RELEASE supplement."). Further, Contorregi admitted he only analyzed seven of the Release ingredients, and *did not* analyze studies about chromium, zinc, and magnesium. *Id.* at 217:1-218:3. Contorregi's failure to analyze the chromium, zinc, and magnesium studies is fatal to his opinions on insulin resistance. Despite opining that GOLO's "disease" claims—including claims about insulin resistance—are false, Contorregi testified it was "[l]ikely" that "[p]eople that follow the GOLO program will have benefits with respect to insulin resistance." *Id.* at 127:13-14. And despite first stating he agreed there is evidence that chromium, zinc, and magnesium help with insulin resistance in the setting of mineral deficiencies, *id.* at 230:1-233:20, Contorregi ultimately testified he "do[esn't] know whether the scientific evidence about magnesium, chromium and zinc on insulin resistance generalizes to healthy individuals." *Id.* at 238:5-12. Nonetheless, Contorregi agreed that "Zinc mimics several actions of insulin in the body," *id.* at 240:7-242:8; "Chromium enhances insulin's action in the body," and is "helpful in processing insulin," *id.* at 247:19-248:14; and zinc, magnesium, and chromium "ha[ve] an impact on weight loss," *id.* at 242:6-14. In total, this warrants exclusion of his opinions. *Sprint Commc'ns Co.*, 2022 WL 619834, at *2 ("[expert] testimony must be reliable").[9]

**Cheskin** considered only the clinical studies, and none of the many studies on the ingredients. Cheskin admitted that he only looked at *four* studies to determine if they substantiated

---

[8] On redirect, Contorregi tried to say he referred to Buynak II, but this was belied by the rest of his testimony and constituted undisclosed expert testimony. Ex. 14, Contorregi Dep. at 333:7-18.

[9] During redirect, Contorregi also made outside the scope, undisclosed opinions about adverse events. Ex. 14, Contorregi Dep. at 325:17-329:11. And in any event, he went on to admit that he has no basis to conclude GOLO ███████████████████████████. *See id.* at 350:3–356:14. *Cf. Advanced Med. Optics, Inc.*, 2005 WL 782809, at *5 ("[The expert] did not disclose an opinion on infringement ... , and as such he may not offer one at trial.").

GOLO's claims. Ex. 11, Cheskin Dep. at 149:19-150:10. Cheskin admitted that he did not conduct any independent research on Release and did not look at *any* ingredient studies, including studies on chromium, magnesium and zinc, to determine if they substantiated the claims. *Id.* at 151:1-157:20. Yet Cheskin admitted if he saw a study showing magnesium, chromium and zinc had weight loss benefits, he would be comfortable that a product containing those ingredients would also have weight loss benefits. *Id.* at 172:17-173:18.

By both Contorregi and Cheskin's own admissions, the opinions in their reports are not reliable and should be excluded.

### IV.    Hal Poret

#### A.    Poret's Newly-Run Surveys Constitute Improper Rebuttal Material.

Poret submitted a "rebuttal" report to Butler, GOLO's survey and confusion expert, on March 3, 2023. Ex. 22, Poret Rebuttal. His four surveys that were run *prior* to the opening expert report deadline and *before* he saw Butler's report are not proper rebuttal and should be stricken.

In total, Poret's report detailed five surveys. His first four surveys were conducted from January 23 through February 2, 2023, which means they were run *before* Poret saw the Butler Report and survey (served February 3, 2023) that he purports to rebut. Ex. 7, Butler Rpt. Poret was engaged for this work around fall 2022. Ex. 24, Poret Dep. at 19:17-24. Despite this, his report was not disclosed as an opening expert report. D.I. 308. Poret states he was asked to: (1) assess likelihood of confusion as to Goli products released after the ACV gummies, and (2) rebut Butler. Ex. 22, Poret Rebuttal. at 3. He never ties the former to the latter. A review of Poret's report shows pages 8-124 are dedicated to addressing his affirmative surveys not disclosed on the opening expert deadline. Poret only addresses Butler's survey at the very end of his report, at pages 125-42.

In addressing improper rebuttal, courts in the Third Circuit consider first whether the report at issue exceeds the proper scope of rebuttal. They then weigh the *Pennypack* factors to determine

whether to exclude an untimely or otherwise improper expert report, which involves looking at the prejudice to the moving party. *Withrow v. Spears*, 967 F. Supp. 2d 982, 1000 (D. Del. 2013) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d. Cir. 1977)).

Poret's report clearly is not a proper rebuttal. It contains four new surveys he conducted *before* the Butler report, but did not produce until the rebuttal deadline. Indeed, the vast majority of Poret's rebuttal is dedicated to addressing his new surveys, rather than rebutting Butler. Consistent with this, courts have held that new surveys that "employ[] a distinct methodology, take[] a different measure, conclude[] with [their] own opinion, and demonstrate[] no need to be withheld until rebuttal" constitute improper rebuttal. *Sinomax USA, Inc. v. Am. Signature Inc.*, 2022 WL 7180339, at *3 (S.D. Ohio Sept. 30, 2022). This is not the first time Poret has done this. *Maker's Mark Distillery, Inc. v. Spalding Grp., Inc.*, 2022 WL 17824427, at *8-9 (W.D. Ky. Dec. 20, 2022) (Poret submitted rebuttal critiquing opposing side's surveys and included new survey). In the instant case, "[i]f [Goli] had wished to affirmatively submit [Poret]'s report in a timely fashion," it "should have done so by the deadline." *Withrow*, 967 F. Supp. 2d at 1003.

To the extent Goli argues it did not bear the burden on the trademark claim, that does not matter. "While Plaintiff ultimately bears the burden of proof …, Defendant … made the lack of consumer confusion a central element of its defense and should have known it would rely on its own studies to demonstrate a lack of confusion." *Sinomax*, 2022 WL 7180339, at *3. Finding otherwise, "would allow parties to withhold expert testimony on which they know they will rely and wait, tactically, to drop it into the lap of their opposing parties at rebuttal." *Id.*

Since Poret's rebuttal is not proper, this Court should weigh the *Pennypack* factors, which weigh in favor of striking Poret's rebuttal. First, his rebuttal surprised and would prejudice GOLO. Despite having retained Poret early on (D.I. 30), and despite having him run his own surveys, Goli

17

did not disclose Poret as an affirmative expert. Second, Goli's decision to withhold Poret until rebuttal would unfairly advantage Goli because it allows his *brand new* surveys to go unchallenged. Third, the fact that Poret prepared the surveys before seeing Butler's, but then waited until the rebuttal deadline to produce his surveys, shows bad faith and gamesmanship by Goli and make clear its goal to move the August 2023 trial date. But GOLO would be prejudiced by any moving of the trial due to Goli's misconduct. *E.g.*, *Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463 (D. Del. 2005), *rev'd on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008) (excluding supplemental report when additional discovery would "undoubtedly disrupt the trial process"); *Juice Ent., LLC v. Live Nation Ent., Inc.*, 2022 WL 2803169, at *4 (D.N.J. July 18, 2022) (reopening discovery would disrupt the orderly and efficient trial of the case). Finally, Goli could rely on Poret's timely disclosed surveys from the preliminary injunction stage. D.I. 30. In addition, GOLO takes no (timing-based) issue with Poret's one survey that *is* proper rebuttal. Ex. 22, Poret Rebuttal at 125-42.

In sum, Poret's non-rebuttal surveys should be excluded. Or at minimum, and in the alternative, GOLO should be permitted a sur-rebuttal. *Maker's Mark*, 2022 WL 17824427, at *11.

### B. Poret's Surveys Are Otherwise Unreliable.

In addition, Poret's new surveys should be excluded because their design is unreliable.

**First**, Poret's stimuli is unreliable because it is static (photos of the website/products), Ex. 22, Poret Rebuttal at 8 n.2, instead of replicating real life "marketplace conditions." *Maui Jim, Inc. v. SmartBuy Guru Enterps.*, 2019 WL 5577165, at *4 (N.D. Ill. Oct. 29, 2019). Poret knows it is important to "create" a "realistic consumer experience." *Fancaster, Inc. v. Comcast Corp.*, 832 F. Supp. 2d 380, 397, 403 (D.N.J. 2011). Yet there, like here, Poret used "a printout and static screenshots" instead of "live versions." *Id.* at 405. That court excluded Poret as his stimuli "did not allow respondents to interact with [the websites] as they ordinarily would." *Id.* Moreover, Poret

*knows* how to use video stimuli. Ex. 23, Poret Decl. (13-9120) ¶¶ 42-44. Here, most of GOLO's ad spending is on television, Ex. 29, Stec Rpt. at 6, and Goli is primarily marketed on social media, *id.* at 10. Poret should have used stimuli like Butler, who "replicated a scenario" showing a GOLO TV advertisement followed by "Goli's advertising on social media." Ex.7, Butler Rpt. ¶¶ 37-40.

**Second**, the Sequential Lineup surveys' use of "Govi" as a control is unreliable. Ex. 22, Poret Rebuttal at 81. "Govi" is so close to "Goli" that it is likely to cause confusion in the control cell,[10] and may even be infringing itself. And Poret's use of "GO" in the control and "GO" in all the other stimuli primed respondents to understand these products shared commonality. As Poret admits, "[p]riming is a problematic source of bias … when the survey makes certain topics more salient in people's thinking than … occurs under realistic marketplace conditions." *Id.* at 138-39.

**Finally**, Poret's two *Eveready* surveys use a format where respondents were shown Goli (and not GOLO) and tested on confusion. *Id.* 28-49. This methodology, which amounts to essentially a "memory test," *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 297 (2d Cir. 1999), is only appropriate when the products would not be seen proximately, and the senior user is a top-of-mind brand.[11] But here, GOLO and Goli are both in the diet and weight loss spheres, Ex. 33, Wind Rpt. ¶ 91, and there is no evidence either product is a "top-of-mind brand."[12]

## V.    Sean O'Keefe

Sean O'Keefe submitted a rebuttal to the report of Dr. Alyson Mitchell that, among other

---

[10] Ex. 43, Shari Seidman Diamond, *Reference Guide on Survey Research*, Reference Manual on Scientific Evidence 3d ed. 2011 (Nat'l Res. Council) at 399 (expert should select control group stimulus that shares as many characteristics with experimental stimulus as possible, with exception of characteristic being assessed).

[11] Ex. 42, Jerre B. Swan, *Likelihood-of-Confusion Surveys*, Trademark and Deceptive Advertising Surveys: Law, Science, and Design, 2d ed. 2022 (American Bar Association), pp. 59-78 at 59.

[12] Poret has previously said in another matter that there "easily could have been zero confusion" had he used *Eveready* format. Ex. 24, Poret Decl. (13-9210) ¶¶ 8-9.

things, offer his opinions on the 500 mg ACV (5% acetic acid) claim on the ACV gummy product label. Ex. 19, O'Keefe Rebuttal ¶¶ 35–59; Ex. 18, Mitchell Rpt. ¶¶ 34-46. O'Keefe testified that there is currently no validated test method for testing for acetic acid in gummy products. Ex. 20, O'Keefe Dep. at 282:24-283:3, 290:24–291:13. However, O'Keefe stated that he is "interested in developing a validated method for analyzing acetic acid in gummy products," and that he would "continue doing research in this area trying to evaluate the best way to do these analyses" and would intend to testify about that continuing research at trial "unless there's some legal reason [he's] not allowed [to] talk[] about work in that area. *Id.* at 290:22-292:17.

There is a legal reason why O'Keefe should be prohibited from discussing new analysis that was not produced with his expert report or relied on for his opinions. Ex. 20, O'Keefe Dep. at 290:5-8 ("Q. For the ... tests that you just mentioned, did you rely on those in forming any of the opinions in this case? A. No."). Springing such late testimony about a yet to be developed methodology on GOLO at trial would be improper, and would surprise and prejudice GOLO without a chance to properly review, depose, and rebut O'Keefe. *Cf. Withrow*, 967 F. Supp. 2d at 1000 (citing *Pennypack*, 559 F.2d at 904–05). Even if O'Keefe has an academic interest in developing new methodology, he does not get to reveal it to the jurors for the first time; that is not how litigation works. *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996) ("Law lags science; it does not lead it."). In sum, the Court should exclude O'Keefe from testifying about his untested, previously undisclosed opinion and require him to rest on his timely disclosed opinions.

## <u>CONCLUSION</u>

The Court should exclude the expert testimony and reports of Keith Ugone, Sameer Somal, Lawrence Cheskin, Carlo Salvatore Contoreggi, Hal Poret, and Sean O'Keefe.

Dated:  April 14, 2023                        BARNES & THORNBURG LLP
**Redacted Version filed on May 19, 2023**

                                              By:  _/s/  Chad S.C. Stover_
                                                   Chad S. Stover (No. 4919)
                                                   William J. Burton (No. 6243)
                                                   222 Delaware Avenue, Suite 1200
                                                   Wilmington, DE 19801
                                                   Tel: (302) 300-3474
                                                   Email: chad.stover@btlaw.com
                                                   Email:  William.burton@btlaw.com

                                                   Amy P. Lally (Admitted *pro hac vice*)
                                                   SIDLEY AUSTIN LLP
                                                   1999 Avenue of the Stars, 17th Floor
                                                   Los Angeles, CA 90067
                                                   Tel: (310) 595-9500
                                                   Email: alally@sidley.com

                                                   Mark D. Hopson (Admitted *pro hac vice*)
                                                   Benjamin M. Mundel (Admitted *pro hac vice*)
                                                   Jacquelyn E. Fradette (Admitted *pro hac vice*)
                                                   SIDLEY AUSTIN LLP
                                                   1501 K Street, N.W.
                                                   Washington, D.C. 20005
                                                   Tel: (202) 736-8000
                                                   Email:  mhopson@sidley.com
                                                   Email: bmundel@sidley.com
                                                   Email: jfradette@sidley.com

                                                   Rachel L. Hampton (Admitted *pro hac vice*)
                                                   SIDLEY AUSTIN LLP
                                                   One South Dearborn
                                                   Chicago, IL 60603
                                                   Tel: (312) 853-7000
                                                   Email: rhampton@sidley.com

                                                   David Carpenter (Admitted *pro hac vice*)
                                                   Kristina Martinez (Admitted *pro hac vice*)
                                                   SIDLEY AUSTIN LLP
                                                   555 West Fifth Street, Suite 4000
                                                   Los Angeles, CA 90013
                                                   Tel: (213) 896-6000
                                                   Email: kmartinez@sidley.com

Darren Cahr (Admitted *pro hac vice*)
Scharf Banks Marmor LLC
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Tel:  (312) 897-1484
Email:  dcahr@scharfbanks.com

*Attorneys for GOLO, LLC and*
*Christopher Lundin*