## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GOLO, LLC,

Plaintiff,

v.

Goli Nutrition Inc., a Canadian Corporation,
Goli Nutrition Inc., a Delaware Corporation and
Michael Bitensky,

Defendants.

Goli Nutrition Inc., a Canadian Corporation and
Goli Nutrition Inc., a Delaware Corporation,

Counter-Plaintiffs,

v.

GOLO, LLC and Christopher Lundin,

Counter-Claim Defendants.

C.A. No. 20-667-RGA

**PUBLIC VERSION
DATED: May 19, 2023**

## OPENING BRIEF IN SUPPORT OF DEFENDANTS' AND COUNTER-PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY

## <u>TABLE OF CONTENTS</u>

I.      NATURE AND STAGE OF THE PROCEEDINGS ..........................................1

II.     SUMMARY OF ARGUMENTS ...................................................................1

III.    RELEVANT FACTS ...................................................................................2

IV.     THE COURT SHOULD EXCLUDE IN FULL OR PART THE TESTIMONY
        OF CERTAIN GOLO PROPOSED EXPERTS. ..............................................2

        A.      Legal Standard ..............................................................................2

        B.      Professor Jerry (Yoram) Wind's Opinions Should Be Excluded as he
                Conducted No Analysis Helpful to the Jury. ....................................2

                1.      Wind's Opinions on The Ultimate Legal Issues Should Be
                        Excluded. .........................................................................3

                2.      Wind's Opinions on Likelihood of Confusion are Ipse Dixit and
                        Unreliable .........................................................................3

                3.      Opinions Speculating on Actual Confusion Should be Excluded. ..............5

                4.      Unmoored Opinions on Harm Must be Excluded........................................7

                5.      Opinions on Intent are Improper and Should Be Excluded. ........................7

                6.      Wind's Rebuttal Report Should Be Excluded. ...........................................8

        C.      Professor Calkins' Corrective Advertising Opinion is *Ipse Dexit* and Must
                be Excluded as Speculative and Unreliable. .....................................8

        D.      Expert Opinions Related to GOLO's False Advertising Claims That Are
                Outside the Scope of the First Amended Complaint Should Be Excluded..........12

                1.      Portions of the Report of Dr. Alyson Mitchell Relying on Unpled
                        Theories....................................................................13

                2.      Portions of the Report of Dr. Bruce Isaacson Relying on Unpled
                        Theories....................................................................14

        E.      Dr. Daniel Fabricant's Legal and Irrelevant Opinions..........................15

        F.      Dr. Isaacson's Survey Lacks "Fit" And Is Unreliable. ........................16

        G.      GOLO's Improper and Untimely Rebuttal Opinions Should Be Stricken. ..........18

                1.      The Butler "Response" Report and Testimony Should Be
                        Excluded. ....................................................................18

                2.      Dr. Merenstein's Improper "Rebuttal" Testimony Should Be
                        Precluded....................................................................19

V.      CONCLUSION...................................................................................20

EAST\202576571.3

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC.*,
  447 F. Supp. 2d 266 (S.D.N.Y. 2006)...................................................................................17

*Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*,
  2017 WL 3528606 (D. Del. Aug. 16, 2017) ......................................................................3, 8

*Am. Eagle Outfitters, Inc. v. Walmart, Inc.*,
  2023 WL 1775702 (W.D. Pa. Feb. 6, 2023) ....................................................................6, 10

*Avon Prod., Inc. v. S.C. Johnson & Son, Inc.*,
  984 F. Supp. 768 (S.D.N.Y. 1997) .......................................................................................3

*BASF Corp. v. Johnson Matthey, Inc.*,
  No. 14-1204-RGA, 2018 WL 2729123 (D. Del. June 6, 2018)...........................................16

*Bell v. Shulkin*,
  709 F. App'x 167 (4th Cir. 2017)........................................................................................14

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006)................................................................................................16

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.*,
  627 F. Supp. 2d 384 (2009) ...................................................................................3, 4, 5, 12

*Brown v. Wal-Mart Store, Inc.*,
  2018 WL 2011935 (N.D. Cal. Apr. 27, 2018) .......................................................................3

*CareDx, Inc. v. Natera, Inc.*,
  2021 WL 1840646 (D. Del. May 7, 2021)............................................................................11

*Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*,
  383 F.3d 110 (3d Cir. 2004)................................................................................................17

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993).............................................................................................................2

*Schneider ex Rel. Estate of Schneider v. Fried*,
  320 F.3d 396 (3d Cir. 2003)................................................................................................11

*Faiella v. Sunbelt Rentals, Inc.*,
  341 F.R.D. 553 (D.N.J. 2022)..............................................................................................19

ii

*Gap, Inc. v. G.A.P. Adventures Inc.*,
  2011 WL 2946384 (S.D.N.Y. June 24, 2011) ...........................................................................3

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)..........................................................................................................2, 6, 16

*Int'l Market Brands v. Martin Int'l Corp.*,
  882 F. Supp. 2d 809 (W.D. Pa. 2012)........................................................................................3

*Juicy Couture, Inc. v. L'Oreal USA, Inc.*,
  2006 WL 1359955 (S.D.N.Y. May 18, 2006) ...........................................................................8

*Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*,
  2016 WL 3545529 (D.N.J. June 29, 2016) ................................................................................8

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)....................................................................................................................2

*M2M Sols. LLC v. Enfora, Inc.*,
  167 F. Supp. 3d 665 (D. Del. 2016)......................................................................................2, 4

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
  559 F.2d 894 (3d Cir. 1977).........................................................................................18, 19, 20

*Monahan Prod. LLC v. Sam's E., Inc.*,
  463 F. Supp. 3d 128 (D. Mass. 2020) .....................................................................................12

*In re Paoli R.R. Yard PCB Lit.*,
  35 F.3d 717 (3d Cir. 1994)..........................................................................................................2

*Perry v. H. J. Heinz Co. Brands, L.L.C.*,
  994 F.3d 466 (5th Cir. 2021) ......................................................................................................7

*Power v. Hewlett-Packard Co.*,
  2023 WL 2705237 (W.D. Pa. Mar. 30, 2023) ........................................................................11

*Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc.*,
  858 F. Supp. 1268 (S.D.N.Y. 1994), *aff'd*, 57 F.3d 1062 (2d Cir. 1995) ...............................18

*RLI Ins. Co. v. Indian River Sch. Dist.*,
  2007 WL 4292109 (D. Del. Dec. 4, 2007)..................................................................13, 14, 15

*T.N. Inc., Ltd. v. Fidelity Nat'l Inf. Servs., Inc.*,
  2021 WL 5980048 (E.D. Pa. Dec. 17, 2021)...........................................................................20

*In re TMI Litig.*,
  193 F.3d 613 (3d Cir. 1999)......................................................................................................12

iii

*Tokio Marine & Nichido Fire Ins. Co., Ltd. v. Calabrese*,
  2011 WL 5976076 (E.D.N.Y. Nov. 28, 2011) ........................................................13

*U.S. v. Downing*,
  753 F.2d 1224 (3d Cir. 1985) ..............................................................................13

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
  949 F.3d 825 (3d Cir. 2020) ..................................................................................2

*Wood v. Showers*,
  822 F. App'x. 122 (3d Cir. 2020) ........................................................................16

*Zazu Designs v. L'Oreal, S.A.*,
  979 F.2d 499 (7th Cir. 1992) ................................................................................8

*Zimmer Surgical, Inc. v. Stryker Corp.*,
  365 F. Supp. 3d 466 (D. Del. 2019) ....................................................................20

**Statutes**

Food, Drug, and Cosmetic Act ..........................................................................15, 16

Lanham Act, the Delaware Deceptive Trade Practices Act ...................................16

**Other Authorities**

*Campbell and Fiske* ...............................................................................................5

Fed. R. Civ. P. 26(a)(2)(D)(ii) .............................................................................18

Fed. R. Civ. P. 26(e)(1)(A) .............................................................................18, 19

Fed. R. Evid. 403 ........................................................................................2, 12, 19

FRE 702(d) ...........................................................................................2, 11, 13, 16

McCarthy on Trademarks and Unfair Competition § 23:2.75 (5th ed. 2020) .......3

iv

Defendants and Counter-Plaintiffs Goli Nutrition Inc., a Canadian corporation, Goli Nutrition Inc., a Delaware corporation, and Michael Bitensky (together, "GN") moves to exclude the opinions of Plaintiffs' experts for the reasons set forth below.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This is a trademark and false advertising dispute. Fact discovery has closed, and on February 3, 2023, GOLO served eight (8) opening expert reports. (D.I. 436). On March 3, 2023, GOLO served seven (7) rebuttal expert reports. (D.I. 458).

## II.    SUMMARY OF ARGUMENTS

GN moves to exclude some or all of certain GOLO expert testimony, as summarized below:

1. Dr. Jerry (Yoram) Wind ("Wind") should be excluded because he failed to apply sound methodologies of consumer perception and his expressions of personal belief usurp the fact finder.

2. Professor Timothy Calkins ("Calkins") should be excluded because he is not qualified as a damages expert, and insofar that he is a marketing expert that does not apply marketing expertise to his opinions (*ipse dixit*), and his "methodology" does not fit with the facts of the case.

3. Dr. Daniel Fabricant ("Fabricant")'s rebuttal testimony should be excluded as improper legal opinion and irrelevant to GN's counterclaims.

4. Dr. Daniel J. Merenstein ("Merenstein") (a physician) and economist Sarah Butler ("Butler")'s rebuttal opinions should be excluded as untimely (Butler) or as improperly presenting new affirmative opinions under the guise of rebuttal (Merenstein).

5. Dr. Bruce Isaacson ("Isaacson") should be excluded as his advertising surveys on consumer perception and materiality did not apply an admissible methodology and lack fit.

6. Finally, none of GOLO's experts should be permitted to testify regarding allegedly false advertisements that have not been properly pled or have been rejected, including Dr. Alyson Mitchell ("Mitchell") (food sciences) and Isaacson.

1

## III.  RELEVANT FACTS

The relevant facts that justify excluding or striking expert opinions and testimony with supporting references to the record are set forth below in connection with specific expert opinions.

## IV.  THE COURT SHOULD EXCLUDE IN FULL OR PART THE TESTIMONY OF CERTAIN GOLO PROPOSED EXPERTS.

### A.  Legal Standard

The party seeking to introduce expert testimony has the burden of establishing its admissibility under Rule 702.  FED. R. EVID. 702; FED. R. EVID. 403; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 n.10 (1993). When considering expert testimony, the trial court must act as a "gatekeeper" to exclude junk science. *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 669-70 (D. Del. 2016) (the court's gatekeeping role "prevent[s] opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury"); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147-49 (1999). The expert's opinion "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *In re Paoli R.R. Yard PCB Lit.*, 35 F.3d 717, 742 (3d Cir. 1994). The decision to admit or exclude expert testimony lies within the trial court's discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997). "Courts look for rigor, not mere 'haphazard, intuitive inquiry.'" *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 834 (3d Cir. 2020).

### B.  Professor Jerry (Yoram) Wind's Opinions Should Be Excluded as he Conducted No Analysis Helpful to the Jury.

In his two reports, Wind proffers subjective beliefs and personal opinions on ultimate legal issues, including confusion, competition, harm and intent, that are improper, unreliable and should be excluded.  Wind, a marketing professor, offers his own subjective belief as to how the factual evidence is to be interpreted and whether GOLO's other experts have applied a sound methodology, which are determinations that the fact-finder can and will undertake.  Accordingly,

the Court should exclude Wind's opinion as "[t]he jury is capable of assessing the facts narrated by [the expert] in his report and he offers no analysis to help them in doing it." *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, 2017 WL 3528606, at *4 (D. Del. Aug. 16, 2017); *see also Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, 627 F. Supp. 2d 384, 443 (2009) (excluding testimony that "reflected no more than his summary of, and spin on" documents).

>    1.    *Wind's Opinions on The Ultimate Legal Issues Should Be Excluded.*

Wind opines that there is an "extremely high likelihood of consumer confusion" between GN and GOLO. Ex. 01 (Wind Rep.) ¶ 174. Superlatives aside, whether there is a likelihood of confusion is an element of trademark infringement and a question that the fact-finder can and will decide. *See Int'l Market Brands v. Martin Int'l Corp.*, 882 F. Supp. 2d 809, 814 (W.D. Pa. 2012) (excluding expert from testifying as to the ultimate conclusion of likelihood of confusion); MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:2.75 (5th ed. 2020) (expert testimony on a likelihood of confusion should generally be excluded in the absence of a survey).[1] Thus, Wind's opinions on whether there is a "likelihood of consumer confusion" is inadmissible.

>    2.    *Wind's Opinions on Likelihood of Confusion are Ipse Dixit and Unreliable*

Wind substitutes his personal opinion on likelihood of confusion for that of the fact finder. In doing so, Wind fails to employ scientifically valid methodology in support of his assertions on what certain documents mean. *See* Ex. 01 (Wind Rep.) ¶¶ 63-70, 91-98 (similarity of the marks); ¶¶ 71-74 (sales targets); ¶¶ 75-90 (product similarity); ¶¶ 99-101 (marketing channels); ¶¶ 103-105, 110-151 (and appendices cited) (actual confusion); ¶¶ 106-109 (Butler survey). In fact, Wind *admitted* that this purported "expertise" was in compiling select evidence and weighing it:

---

[1] Wind did not test consumer perception with a survey, despite conducting many such surveys over the last 30 years. *See, e.g.*, *Avon Prod., Inc. v. S.C. Johnson & Son, Inc.*, 984 F. Supp. 768, 781 (S.D.N.Y. 1997); *Brown v. Wal-Mart Store, Inc.*, 2018 WL 2011935, at *8 (N.D. Cal. Apr. 27, 2018); *Gap, Inc. v. G.A.P. Adventures Inc.*, 2011 WL 2946384, at *11 (S.D.N.Y. June 24, 2011).

> Q.  So how is your analysis helpful to the jury?
>
> A.  By the fact that I can take <u>all this endless amount of data and evidence we have … put it together in a simple explanatory term</u>, and make sense of each one of them based on my experience and academic experience in business, kind of practical experience in working with companies . . .

Ex. 02 (Wind Tr.) 316:11-318:8 (objection omitted, emph. added); *see id.* 321:7-11 ("The science [I applied] is by identifying all the available data, and checking each … is consistent with the conclusion"). *Bracco*, 627 F. Supp. 2d at 443 (excluding expert from offering opinion on personal spin of documents); *M2M Sols.*, 167 F. Supp. 3d at 678 (declining "to blindly accept the unsubstantiated conclusions of its experts" in the absence of "meaningful analysis").  Wind did not consider "all available data," just data supportive to his opinions.  He attempts to cloak his interpretation of certain documents as science with fanciful phrases "consumer journey" and "convergent validity."  Even so, review of the "methodologies" shows they are not scientific at all.

*Consumer Journey.*  Wind claims to have applied a marketing methodology called the "consumer journey" to evaluate the evidence "based on how customers make purchase decisions." Ex. 01 (Wind Rep.) ¶¶ 9-10.  As a threshold matter, the "consumer journey" is not a recognized methodology by Courts for assessing likelihood of confusion.  This is for good reason.  Wind breaks down the "consumer journey" into three phases: "1) the gathering of information about the brand … 2) the assembly of the consideration set; and 3) the purchase and post-purchase experience." Ex. 01 (Wind Rep.) ¶ 47.  In the first phase, Wind merely agrees with the opinions of Dr. Eric DeRosia, another GOLO expert in this case.  *Id.* ¶¶ 48-54; n.60-n.67. In the second phase, in just four paragraphs (*id.* ¶¶ 55-58), Wind opines in conclusory fashion that the "record evidence shows GOLO and Goli are [] competitors …"  (*id.* ¶ 56) and so would sit in the same consideration set.  In the final phase, Wind narrates certain negative Amazon reviews for GN's ACV gummy (noting the 4,000 one- and two-star reviews), purportedly to show the post-purchase experience.

*Id.* ¶¶ 59-60. In an analogous situation, a court excluded expert testimony under the guise of marketing expertise finding "such testimony [] unhelpful to… the trier of fact…because the documents speak for themselves and do not require expert testimony to discern what they mean." *Bracco*, 627 F. Supp. 2d at 442. Incredibly, Wind disregarded over 260,000 five-star reviews and 43,000 four-star Amazon reviews for the ACV product and offers no opinion on how those reviews impacted the "consumer journey." Ex. 02 (Wind Tr.) 233:16-234:8; 234:18-238:18; 239:2-16.

*Convergent Validity.* The second "methodology" Wind purports to use is a "convergent validity" analysis that he introduces, citing a paper by *Campbell and Fiske*. Ex. 01 (Wind Rep.) ¶169, n.176. Once again, the "convergent validity" is not a recognized methodology used by courts in determining likelihood of confusion. Even if it were, Wind did not even apply this "methodology." Indeed, at deposition, Wind conceded that he did not perform the convergent validity method described in the *Campbell and Fiske* paper (*see* Ex. 20), and did no correlation or statistical analysis. Ex. 02 (Wind Tr.) 321:24 -323:6; 336:17-338:23. Instead, as shown by Wind's Figures 19 and 20, all he did was weigh the record evidence in favor of GOLO, discounted or ignored all the evidence in favor of GN, and then, putting his spin on the selective evidence, summarily concludes that the evidence all points to a high likelihood of confusion. *Id.* Figs. 19, 20. He then labels the document review "convergent validity" and calls it science.

### 3. Opinions Speculating on Actual Confusion Should be Excluded.

Wind's report likewise includes long, unhelpful narrations of phone recordings, copies of Amazon reviews and/or emails that he claims show actual confusion. Ex. 01 (Wind Rep.) ¶¶ 110-51; Appx. D. As before, to reach this conclusion he "feels" confident in, Wind just "assemble[d] all the actual confusion data [GOLO] had, and then [] analyze[d]" it. Ex. 02 (Wind Tr.) 26:13-20; 295:12-14.

Wind then, with extreme prejudice, makes the determination that each of the consumers in

the data he looked at *were actually confused* even though he admits that "[h]e'll never know", he is "not [a] mind reader" and does not know what the consumers' state of mind was for these alleged instances of actual confusion. Ex. 02 (Wind Tr.) 292:4-295:8. Again, here, Wind usurps the role of a fact-finder to have a person under the guise of expert opinion tell the fact-finder that certain evidence from consumers Wind never actually spoke to or surveyed is evidence of actual confusion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (courts are not required "to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert").

Moreover, even accepting the 240 instances Wind identified as evidence of actual confusion (it is not), Wind conceded he never considered how many tens of millions of products GN or GOLO sell, or the denominator or the actual percentage of communications that showed actual confusion. Ex. 02 (Wind Tr.) 182:9-183:7; 296:1-23; 309:19-310:16 ("Forget the percentage. There is a large enough body of people that are confused…"). This omission is fatal to the reliability of Wind's conclusion, as the Court found in denying GOLO's preliminary injunction. When GOLO presented 210 instances of purported actual confusion, this Court aptly asked, "what is the denominator?", ultimately finding *de minimis* actual confusion given the potentially millions of customer contacts at play and called the 210 instances "isolated and idiosyncratic." D.I. 62 at 18. Wind's opinion is therefore ungrounded and should be excluded.

To address the problem, Wind speculates that the actual confusion he reviewed was just the "tip of the iceberg" and that "the full size of the iceberg hidden under the surface, in this case the totality of consumers confused . . . is vastly larger." Ex. 01 (Wind Rep.) ¶ 151. Yet Wind still does not base this opinion on any evidence or studies. *See Am. Eagle Outfitters, Inc. v. Walmart, Inc.*, 2023 WL 1775702, at *3 (W.D. Pa. Feb. 6, 2023) ("[w]hen the expert's testimony relies on [ ] subjective beliefs or unsupported assertions, there is no methodology for the Court to assess" and

so "must be excluded"); *Perry v. H. J. Heinz Co. Brands, L.L.C.*, 994 F.3d 466, 473 (5th Cir. 2021) (likelihood of confusion testimony from marketing professor who did not conduct survey was "personal opinion" and not evidence supporting finding of infringement). Wind's personal opinion about substantial unearthed confusion under the guise of expertise is extremely prejudicial to GN.

### 4.    *Unmoored Opinions on Harm Must be Excluded.*

Wind also offers broad untethered opinions on harm with no objective foundation, methodology, quantification, or supporting evidence; he opines on the *types* of damages that GOLO could have suffered, such as lost profits, loss of control of brand, loss of distinctiveness, and tarnishment. Ex.01 (Wind Rep.) ¶¶ 37-43, 158-66. His report offers purported examples of these harms, but does not support his opinions with any record evidence of harm that GOLO has actually suffered. Instead, he offers the following hypotheticals opinions about the future harm that GOLO might suffer despite the fact that the alleged misconduct by GN has been ongoing for over three years: (i) trademark infringement *can* cause harm" Ex. 01 (Wind Rep.) ¶¶ 37-43; (ii) the confusion "will cause harm to the GOLO brand." Ex. 01 (Wind Rep. ¶¶ 158, Fig. 18.)  His other examples of harm, e.g., lost sales, are likewise purely conclusory and full of caveats. Ex. 01 (Wind Rep.) ¶¶ 159-66. At deposition, Wind testified that his opinions on harm go to "likelihood of harm" rather than actual harm.  Ex. 02 (Wind Tr.) 235:23-238:1; 239:2-16.

### 5.    *Opinions on Intent are Improper and Should Be Excluded.*

Wind opines that GN intentionally took steps to misdirect consumers, relying on search engine optimization ("SEO") search terms as proof; but he never looked at any testimony regarding this issue, including testimony by GN witnesses that deny doing so, and he is not an expert on SEO or the algorithms used to select search terms. Ex. 02 (Wind Tr.) 117:5-123:5.  He also opines that what GN did here is akin to *identity theft*, a crime that has an intent prong, and that GN intended trademark infringement. Ex. 01 (Wind Rep.) ¶ 12(b); Ex. 02 (Wind Tr.) 115:18-117:4. These

7

opinions should be excluded; it is well-established that an expert cannot testify to the jury on intent. *Am. Cruise Lines*, at * 5 (expert testimony that a defendant intended to cause consumer confusion excluded as it "is not a proper topic for expert testimony").

> 6.    *Wind's Rebuttal Report Should Be Excluded.*

Wind also offers a "rebuttal" opinion, in which he says he considered whether four GN expert reports (Sameer Somal, Keith R. Ugone, Laura O'Laughlin, and Hal Poret) "impact the analysis and opinions I put forth in the Wind Report." Ex. 03 (Wind Reb. Rep.) ¶ 2. Wind concludes that they "have no impact on the analysis and opinions" in his opening report and that it continues to be his opinion that GN "caused confusion" – the ultimate legal issue. Ex. 03 (Wind Reb. Rep.) ¶ 20.  For all of the reasons stated above, his rebuttal report should also be excluded.

## C.    Professor Calkins' Corrective Advertising Opinion is *Ipse Dexit* and Must be Excluded as Speculative and Unreliable.

Calkins is a marketing expert who has never offered a damages opinion or quantified corrective advertising. Ex. 05 (Calkins Tr.) 12:12-18; 85:15-23. Calkins submitted a report on actual damages "attempting to quantify the corrective advertising [award]" on GOLO's trademark infringement claim.[2] Ex. 05 (Calkins Tr.) 7:3-12; 8:14-22. Corrective advertising is a compensatory "method of repair" after a defendant "diminishes the value of the plaintiff's trademark and advertising restores that [infringed] mark to its original value." *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992). Such damages can only be awarded where the trademark holder has demonstrated actual damages. *See Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*, 2016 WL 3545529 at *30 (D.N.J. June 29, 2016); *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, 2006 WL 1359955, at *2 (S.D.N.Y. May 18, 2006) (precluding an award of corrective

---

[2] Calkins analyzed GOLO's trademark infringement claim, not GOLO's false advertising claims. *Compare* Ex. 04 (Calkins Rep.) at ¶ 81 *with* Ex. 05 (Calkins Tr.) 68:5-16; 69:17-70:7).

advertising where trademark holder failed to show lost profits, lost sales, or damage to reputation).

While Calkins conceded that corrective advertising is a remedy intended to correct harm to the trademark holder, he did not consider whether there was confusion, or whether GOLO suffered lost profits or damage to reputation, in determining the cost of appropriate corrective advertising damages. Ex. 05 (Calkins Tr.) at 32:5-34:23; 39:4-10. Rather, without considering any case testimony or conversations with GOLO representatives (about either harm or how GOLO would go about correcting such harm), he merely *assumed* that: (i) there was confusion; (ii) GOLO suffered harm; and (iii) damages were appropriate. *Id.* at 8:23-9:6; 60:7-61:22; 63:22-64:2. He further assumed other experts addressed these damages—but did not consider any such opinions in quantifying the appropriate corrective advertising award based on the facts of this case. *Id.*

So what did Calkins do? His report simply "estimates" the number of impressions GN generated on social media based on a 2020 *draft* investor presentation. The document summarily stated that as of October 2020, "more than ▮▮▮▮▮ in people in North America saw Goli daily." Ex. 04 (Calkins Rep.) ¶¶ 47, 59, 76; Ex. 06 (GOLI0134816 at -847). Calkins uses this roundabout figure to project a number of overall impressions for 2019 and 2021-2023, totaling (by his estimation) over ▮▮▮▮▮ impressions, and then multiplied this by GOLO's current cost-per-impression for television advertising (of $▮▮▮▮) to calculate a corrective advertising award of approximately ▮▮▮▮▮▮ (100% television-based corrective advertising). He also proposes two alternative calculations, to be applied "if the jury determines": (i) GOLO would need to generate corrective impressions though a 50% television and 50% Facebook advertising split (▮▮▮▮); or (ii) that GOLO would do it through a mix of Google Ads, Amazon Ads, and television (▮▮▮▮). Ex. 04 (Calkins Rep.) ¶¶ 79, 80. Again, Calkins merely multiplies existing cost-per-impression on each platform by total Goli impressions. *Id.*

The underlying number of "Reparative Impressions" required for GOLO's hypothetical "Repair Campaign" is wholly unsubstantiated by Calkins. Calkins assumed *every* impression GN generated was a GOLO misimpression—a 100% confusion rate. Ex. 05 (Calkins Tr.) 39:4-10. That is, without any basis, Calkins assumed that every single GN impression caused confusion, harm to GOLO's trademark, and damage to GOLO. *Id.*, 46:13-47:2. Calkins also failed to consider whether (or not) each impression was material to a consumer, if ads were actually seen, if certain individuals received hundreds of impressions, or were not confused:

> Q. But you would agree that not every impression that Goli Nutrition generated created a misimpression, right? Not every impression resulted in a confused customer?
> A. Again, I'm not commenting or opining on was there damage done.
> * * *
> Q. And so in your quantification you're not connecting it in any way to the harm associated with what percentage of people actually received a misimpression as opposed to an impression?
> A I don't have an opinion on that.

*Id.*, 60:7-12; 63:22-64:2. Further, when asked if a "corrective advertising campaign [should] repair the confusion caused by people who, [1.] knew of GOLO or heard of GOLO, [2.] saw a Goli Nutrition ad, and, [3.] were confused," Calkins confirmed that he did nothing but quantify GOLO's cost in conducting all of GN's marketing, offering the inane comment:

> A. *I will leave that question to the question of harm.* In, you know, my efforts we began with that assumption . . . .

*Id.*, 89:5-14 (emphs. added). In other words, GOLO seeks to have Calkins testify that GOLO should be awarded corrective advertising damages between ███████████████ (*i.e.*, the largest corrective advertising damages award ever), while Calkins did nothing to substantiate what is reasonably "*corrective*," and has no opinion on whether these awards would be appropriate. This warrants exclusion. *See e.g., Am. Eagle Outfitters*, 2023 WL 1775702, at *3-4 (excluding damages expert who failed "to perform his purported purpose as an expert, to 'calculate damages'").

Calkins not only readily conceded he was not offering a substantiated damages opinion, but also he did not apply his marketing expertise to opine on a corrective marketing campaign for GOLO in either form or substance.  For example, he did not prepare a corrective advertising campaign or propose how one would need to be implemented for GOLO. Ex. 05 (Calkins Tr.) 155:13-16; 163:21-170:24. Calkins testified that the "best" framework for a marketing campaign or plan—one that he uses and supplies to his students—includes some variation of the following three steps: (1) identifying business objectives; (2) strategic initiatives ("what are the big things that we are going to focus on to try to achieve those objectives"); and (3) tactical executions ("how exactly are we going to make those things happen"). Yet he presents none of those opinions in his report. *Compare* Ex. 05 (Calkins Tr.) 20:16-25:10, 120:13-121:6 with Ex. 04 (Calkins Rep.) ¶¶ 49-74; 75-82. And because he did not offer any opinion on the appropriate scope of a GOLO Repair Campaign, Calkins did not consider any of the usual metrics to determine whether any such marketing plan would be effective. Ex. 05 (Calkins Tr.) 155:13-16; 163:21-164:3; 164:20-22; 167:24-168:6; 170:5-24.  While he identifies three potential corrective campaigns (TV, TV/FB, and Amazon/Google/TV), Calkins disavowed opinions on the proper "allocation of the corrective campaign [-] that is correct." *Id.*, 155:13-16; 163:21-164:3; 164:20-22; 167:24-168:6; 170:5-24.

As a result, Calkins must be excluded on several grounds.  First, Calkins is not a qualified damages expert; nor does he apply any of his marketing expertise to the damages opinions he purports to offer in this case. *See Schneider ex Rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) ("Rule 702 . . . requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility") (internal quotations omitted); *Power v. Hewlett-Packard Co*., 2023 WL 2705237, at *8-9 (W.D. Pa. Mar. 30, 2023) (excluding expert testimony where the expert's knowledge was not connected to the question at issue); *see CareDx, Inc. v. Natera, Inc*., 2021 WL

1840646, at *3-4 (D. Del. May 7, 2021) (excluding expert corrective advertising testimony under FRE 403 where expert merely performed simple calculations without applying his expertise[.]"). Second, even if qualified, Calkins fails to utilize any valid and accepted methodology, connecting an appropriate Repair Campaign with the calculations Calkins ultimately preformed. "This failure to show that "unspecified advertising would be an effective way to remedy [the alleged] confusion is a fatal flaw in [Calkin's] analysis." *Monahan Prod. LLC v. Sam's E., Inc*., 463 F. Supp. 3d 128, 148 (D. Mass. 2020); *see also Bracco*, 627 F. Supp. 2d at 444 (excluding damages testimony based upon the expert's assumption of damages causation). Third, Calkins' opinion is wholly unreliable, as it is premised on nothing more than the speculation that every viewer of each of GN's impressions was confused, and an effective corrective advertising campaign would be equivalent (in all ways) to the campaign of GN.[3] *In re TMI Litig.*, 193 F.3d 613, 670-74 (3d Cir. 1999) (affirming exclusion of opinion was based on speculative assumptions and therefore lacked "fit").

### D.    Expert Opinions Related to GOLO's False Advertising Claims That Are Outside the Scope of the First Amended Complaint Should Be Excluded.

GOLO identifies seven categories of allegedly false and misleading statements made by GN in the First Amended Complaint ("FAC"), defining them as "Defendants' False and Misleading Claims," and limiting its false advertising causes of action to these claims. D.I. 124, ¶¶ 101-77 & Counts IV-VI. On August 5, 2022, GOLO moved for leave to file a new pleading (the "SAC") adding new allegedly false and misleading advertising statements and broadening the scope of its false advertising causes of action by deleting the limiting references to the alleged "False and Misleading Claims." D.I. 214. On March 9, 2023, after all expert disclosures were

---

[3] The fact that GN was a 2020 market entrant for gummy ACV, Ashwa, and other supplements (containing ingredients lacking in GOLO's Release pill product), and that GOLO was historically branded as a weight-loss program, lend themselves to a fair assumption customer confusion was less than 100% of impressions. But a contrary opinion requires justification by a marketing expert.

made, the Court denied GOLO's motion. D.I. 462. Notwithstanding, GOLO has refused to withdraw its proffered expert opinions related to the additional allegedly false and misleading claims of the SAC that the Court disallowed. The Court should strike or exclude those opinions as irrelevant under FRE 702 as they relate to claims that are not part of this case. *See, e.g., U.S. v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985) (expert testimony must be "sufficiently tied to the facts of the case"); *RLI Ins. Co. v. Indian River Sch. Dist.*, 2007 WL 4292109 (D. Del. Dec. 4, 2007) (striking expert report and excluding testimony based on claims not alleged in complaint).

1.    *Portions of the Report of Dr. Alyson Mitchell Relying on Unpled Theories.*

Sections XI and XII of the Mitchell report address allegedly false advertisements that GOLO was not permitted to add to the case, and which are not asserted in the operative pleading. Ex. 07 (comparison chart). These opinions should be stricken in their entirety. *See, e.g., Tokio Marine & Nichido Fire Ins. Co., Ltd. v. Calabrese*, 2011 WL 5976076 (E.D.N.Y. Nov. 28, 2011) (denying motion to amend complaint and granting cross-motion to strike expert report and preclude expert testimony regarding new allegations).

There are two additional portions of Mitchell's report that exceed the scope of the FAC. In § VIII, Mitchell opines that advertisements GN disseminated years ago, and has permanently discontinued, regarding health benefits associated with its ACV Gummies are false. Ex. 08 (Mitchell Rep.) ¶¶ 63-72. These new alleged "claims" were identified in passing in the general background discussions about GN in the FAC under the header "Defendants Launch Goli's Products, Which Compete With GOLO's Proprietary Weight Loss and Wellness Products", GOLO mentioned some of these general statements in passing. *See* D.I. 124, ¶¶ 51-69. For example, GOLO alleged GN "markets its ACV products as having appetite control, weight loss, and weight management benefits." D.I. 124, ¶ 65; *cf.* Ex. 8 ¶¶ 70-72. Importantly, GOLO did *not* include any of these statements in the seven categories of statements it specifically defined in a separate section

13

of the FAC as the "Defendants' False and Misleading Statements." *See* D.I. 124 ¶¶ 101-77. Moreover, the alleged misleading statement Mitchel plucked from the background section of the FAC to try to expand the scope of otherwise narrowly pled false advertising statements was not tied to any particular advertisements. Accordingly, the Court should exclude Mitchell from opining on these unidentified, generic, unsupported statements. *See Bell v. Shulkin,* 709 F. App'x 167, 169 (4th Cir. 2017) ("background allegations" not designated "as part of [the] delineated causes of action" do not afford fair notice, and thus are not pled causes of action); *RLI Ins. Co.*, 2007 WL 4292109, at *4-5 (striking expert opinions "largely irrelevant to the claims at issue").

Mitchell also opines on the advertisements touting benefits of the KSM-66 ashwagandha extract used in GN's Ashwa Gummy product and the "highly bioavailable" nature of ashwagandha. Ex. 08 (Mitchell Rep.) ¶¶ 80-102. The FAC includes no mention of the bioavailability of ashwagandha. *Cf.* D.I. 124, ¶¶ 154-62 (the "Clinically Proven Claim"). The National Advertising Division ("NAD") has addressed the Clinically Proven Claim and found it to be *distinct* from the bioavailability claim and claims about the KSM-66 ingredient.[4] Thus, the FAC cannot support these allegations raised for the first time in Mitchell's report. Ex. 09 at 7.

2.    *Portions of the Report of Dr. Bruce Isaacson Relying on Unpled Theories.*

Similarly, portions of the expert report submitted by Isaacson should be stricken. Specifically, Isaacson conducted surveys to test the materiality of certain advertising statements: (1) only identified in the background section of the FAC; or (2) identified only in the rejected, proposed SAC. Specifically, the claims appearing in the background of the FAC but not identified

---

[4] Specifically, the NAD held it could separately consider (without a risk of inconsistent judgments) advertising statements about the efficacy of the KSM-66 ashwagandha *ingredient* in Goli Nutrition's Ashwa Gummy product (ingredient claims) and statements that the product provides certain *benefits* (product claims), such as statements that the product has been "clinically proven" to do so. *See* Ex. 09 at 6-9 (Church & Dwight NAD decision).

14

as a "False and Misleading" claim that are opined on by Isaacson include:

(i)    "Apple Cider Vinegar Gummies 'falsely and misleadingly represents that Goli's products provide 'simple' and heathy ways to manage weight, strengthen their immune systems, and improve overall health.'" Ex. 10 (Isaacson Rep.) at ¶ 22; and

(ii)    Goli Nutrition Ashwa Gummies have benefits such as "weight management" and "stress reduction and calming effects." Ex. 10 (Isaacson Rep.) at ¶ 23.

*See also id.* ¶¶ 90, 108, 148. Isaacson should be precluded from presenting any surveys testing these claims and related testimony. *See RLI Ins. Co.*, 2007 WL 4292109, at *4-5.

Isaacson should likewise be precluded from providing testimony on the claims cited only in GOLO's proposed SAC: (i) that the Ashwa Gummies product "Supports a Healthy Body Weight" Ex. 10 (Isaacson Rep.) at ¶ 23; and (ii) various claims concerning GN's Superfruits Gummies and Supergreens Gummies Ex. 10 (Isaacson Rep.) at ¶ 24. Ex. 07 (comparison chart). *See RLI Ins. Co.*, 2007 WL 4292109 at *4-5.

In sum, it is too late for GOLO to be injecting new issues into the case. *See* D.I. 462. Mitchell and Isaacson's testimony should be limited to opining on the advertising addressed in the FAC, ensuring that the testimony fits the claims. *See RLI Ins. Co.*, 2007 WL 4292109, at *4-5

### E.    Dr. Daniel Fabricant's Legal and Irrelevant Opinions.

Fabricant's responsive report purports only to rebut the legal standards that GOLO asserts were utilized by GN's experts, Cheskin and Contoreggi, to frame their analysis of GOLO's advertisements. Ex. 11 (Fabricant Tr.) 49:7-21; 125:21-126:6. Fabricant opines, based on his past experience working at FDA, they would apply a *different legal standard* in determining whether the labelling for GOLO's Release pills complies with the Food, Drug, and Cosmetic Act ("FDCA"). Ex. 11 (Fabricant Tr.) 125:21-126:13. He does not offer a substantive opinion as to GOLO's advertisements or even whether the advertisements are part of the labelling for Release and thus subject to the FDCA. Ex. 11 (Fabricant Tr.) 125:21-126:6; 142:18-145:7; 175:10-177:20.

15

This opinion is unhelpful and misplaced, as both Cheskin and Contoreggi explained they are not opining on the applicable legal standard; they described the standard to frame their analyses of GOLO's advertising statements and the underlying clinical studies on which GOLO relies. Ex. 12 (Cheskin Tr.) 114:13-116:15; Ex. 13 (Contoreggi Tr.) 18:17-19:6; 34:14-35:17. But in any case, "[i]t is the province of a judge – not an expert witness – to instruct a jury about governing law." *Wood v. Showers*, 822 F. App'x. 122, 124 (3d Cir. 2020). Thus, the Court must "ensure that [Fabricant] does not testify as to the governing law of the case". *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006); *accord BASF Corp. v. Johnson Matthey, Inc.*, No. 14-1204-RGA, 2018 WL 2729123, at *1 (D. Del. June 6, 2018) (striking expert report that sought to instruct jury on relevant legal principles). Further, GN does not assert a FDCA claim, and Fabricant's report does not address GN's asserted causes of action (false advertising under the Lanham Act, the Delaware Deceptive Trade Practices Act, and common law unfair competition). Fabricant concedes that he has no expertise in these areas of the law, Ex. 11 (Fabricant Tr.) 46:3-49:6, and thus his testimony would not assist the trier of fact—and should be excluded on this alternative basis. *See BASF Corp.*, 2018 WL 2729123 at *1 (expert report stricken as not helpful to the jury).

### F.     Dr. Isaacson's Survey Lacks "Fit" And Is Unreliable.

Isaacson's surveys on consumer perception and materiality for false advertising claims do not "reliably appl[y] the principles and methods to the facts of the case" and should be excluded because he did not use the correct universe and inserted bias in coding responses.  FRE 702(d); *see also Gen. Electric*, 522 U.S. at 146 ("[C]onclusions and methodology are not entirely distinct from one another."). As a threshold issue, as noted *supra*, Isaacson's advertising perception survey is entirely irrelevant under FRE 702 as it *only* tests weight management, a claim not at issue for the Ashwa and ACV gummies in FAC. Ex. 10 (Isaacson Rep.) at ¶¶ 22, 23, 32(iv).

Regardless, Isaacson's opinions should nonetheless be excluded because his survey

universe excluded crucial relevant populations. *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 118-19 (3d Cir. 2004) (excluding consumer survey based on flawed universe); *Manual for Complex Litigation*, Federal Judicial Center, 103 (4th ed. 2004) ("The sampling methods used must conform to generally recognized statistical standards" including a properly chosen and representative population sample). Isaacson's population was over-representative in that it only included respondents that indicated they had or were likely to purchase "[a] dietary supplement that improves health, energy, and/or weight management." Ex. 10 (Isaacson Rep.) at Ex. 3, Qs D and E. This made the primary population for ACV and Ashwa gummies pre-disposed to focus on weight management. Next, it was under-representative because it excluded respondents that bought or are likely to buy GN's ACV gummies for the benefits of its B vitamins or the Ashwa gummies for Vitamin D. Ex. 14 (Isaacson Tr.) 98:8-99:18; *cf.* Ex. 10 (Isaacson Rep.) at Ex. 2 at 2-3, 57; D.I. 124 ¶ 75. These methodological flaws helped to skew results in favor of obtaining a favorable survey result by having respondents that already indicated interest in weight management, at the exclusion of others. Further, while relaxation is a primary advertised benefit for GN's Ashwa gummies, it is not in the survey screener at all. Ex. 10 (Isaacson Rep.) at Ex. 3, Qs D and E; *id*. at Ex. 2 at 57. Thus, respondents who may purchase the product for this benefit are excluded. By excluding a crucial relevant population, the survey is unreliable.

Isaacson's direct involvement in the survey and coding of the responses is yet another basis to exclude his opinions due to subjective bias in GOLO's favor. Ex. 10 (Isaacson Rep.) at 1; Ex. 14 (Isaacson Tr.) 27:16-29:24 (discussing direct involvement in coding). However, it is standard practice for experts to employ blind coding. *See, e.g., 24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC.*, 447 F. Supp. 2d 266, 280 (S.D.N.Y. 2006) ("the coding was not similarly 'blind'. . . his biases could be reflected in the coding of the responses"). The problem with direct

17

involvement in the coding—as compared to blind coding—is that the person coding may anticipate and influence the results, even if unintentionally. *See, e.g., Revlon Consumer Prods. Corp. v. Jennifer Leather Broadway, Inc.*, 858 F. Supp. 1268, 1276 (S.D.N.Y. 1994) (finding survey with subjective coding unreliable and entitled to no weight), *aff'd*, 57 F.3d 1062 (2d Cir. 1995).

### G.    GOLO's Improper and Untimely Rebuttal Opinions Should Be Stricken.

The case Scheduling Order required opening expert reports by "the party who has the initial burden of proof on the subject matter," whereas rebuttal reports would "contradict or rebut evidence on the same matter identified by another party" in opening reports. D.I. 96, 410. Expert disclosures must be supplemented "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." FED. R. CIV. P. 26(e)(1)(A). GOLO's rebuttal experts Merenstein and Butler each offered inappropriate "rebuttal" or untimely supplemental opinions that should be stricken under the *Pennypack* factors.[5]

#### 1.    The Butler "Response" Report and Testimony Should Be Excluded.

On March 3, 2023, Butler proffered a responsive report addressing GN expert Hal Poret's ("Poret's") 2020 surveys *in opposition to GOLO's request for a preliminary injunction* ("the Butler Response"). Ex. 15 (Butler Rep.) ¶ 5. Under FED. R. CIV. P. 26(a)(2)(D)(ii), the Butler Response is not timely, as it was submitted 959 days after Poret's 2020 disclosures.[6] At best, the Butler Response can be deemed a *supplement* to the August 7, 2020 rebuttal report of GOLO expert Joel H. Steckel rebutting Poret's July 2020 surveys (the "Steckel Report"). D.I. 46-1. But the Butler

---

[5] (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; (5) the explanation for the failure to disclose; and (6) the importance of the testimony. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977).

[6] Because Goli Nutrition does not bear the burden on GOLO's trademark infringement claim, Poret did not make an affirmative expert disclosure on February 3, 2023.  D.I. 308, 410.

Response was not submitted because Steckel's Report was "incomplete or incorrect" in "a material way" under FED. R. CIV. P. 26(e)(1)(A). Rather, Butler "generally agree[s] with the [timely 2020] critiques" of Steckel, which admittedly overlapped.  Ex. 16 (Butler Tr.) 122:18-127:6.  Nor did Butler review any deposition transcripts or material produced in fact discovery to inform her opinions. Ex. 15 (Butler Resp. Rep.) ¶ 4; Ex. B; Ex. 16 (Butler Tr.) 119:6-20. Butler merely belatedly reviewed the information available to Poret and Steckel in 2020 and offered her spin on the 2020 reports. That is not appropriate supplementation. *Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553, 567 (D.N.J. 2022) ("Rule 26(e) is not a vehicle for experts to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon.")

Aside from surprise to GN, the untimely and improper Butler Response should be excluded under *Pennypack* at least because GOLO offered no explanation for why it needed a "do over" of Steckel's critiques, and the rebuttal opinions are no longer important (or relevant) to the case given that Poret updated and modified the 2020 surveys' stimuli, screening questions, criteria, and universe in his 2023 rebuttal report—as Butler conceded.[7] Ex. 17 (Poret Rep.) 8 at n.2; Ex. 16 (Butler Tr.) 115:1-117:22; 127:21-128:9; 134:17-21. But regardless, allowing Butler to rebut an already-rebutted (and henceforth supplemented) 2020 survey at trial would confuse the jury, and prejudice their opinions of Poret. FRE 403. The Butler Response should be stricken.

2.    *Dr. Merenstein's Improper "Rebuttal" Testimony Should Be Precluded.*

Instead of submitting an opening report, in Section X of his "rebuttal" report, Merenstein opined on GOLO's false advertising claims on which *GOLO* has the burden of proof. Ex. 18 (Merenstein Rep.) at 32-36. Merenstein admitted that these opinions do not rebut or contradict any

---

[7] Butler submitted an affirmative survey report, D.I. 436, to which Mr. Poret responded.  Because these rebuttal reports crossed, Butler had not seen or evaluated Poret's revised surveys when offering the opinions in the Butler Response Report.

of the opinions offered by GN's experts in their opening reports.[8] Ex. 19 (Merenstein Tr.) 132:20-134:9. The *Pennypack* factors favor excluding Section X, at least insofar as GN was prejudiced by not being able to serve a response during expert discovery. Moreover, while Merenstein attempted to tie the opinions in Section X of his report to GN's opening reports by stating "I also analyzed whether Goli's claims are scientifically substantiated and whether Goli's claims meet the standards applied by its experts in this litigation," Ex. 18 (Merenstein Rep.) at 32, GOLO did not articulate why it could not test that earlier. Tellingly, Merenstein stated that to test whether GN's claims were "scientifically substantiated," he was "provided nearly 60-bates stamped articles that I understand were produced by Goli [*during fact discovery*] as evidence of product efficacy." Ex. 18 (Merenstein Rep.) at 32. For these reasons, the Court should strike Section X of the Merenstein report and preclude related testimony. *See, e.g., Zimmer Surgical, Inc. v. Stryker Corp*., 365 F. Supp. 3d 466 (D. Del. 2019) (striking portions of rebuttal report that were properly subject of opening report); *T.N. Inc., Ltd. v. Fidelity Nat'l Inf. Servs., Inc.*, 2021 WL 5980048 (E.D. Pa. Dec. 17, 2021) (excluding rebuttal report that went "well beyond contradicting and rebutting and is more accurately classified as an initial expert report").

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should exclude or strike GOLO's expert opinions as set forth in the accompanying Proposed Order.

---

[8] Merenstein was retained before the opening report deadline.  Ex. 19 (Merenstein Tr.) 132:9-19.

Dated: April 14, 2023

**OF COUNSEL:**

Tamar Y. Duvdevani
Andrew J. Peck
Colin J. Steele
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
tamar.duvdevani@us.dlapiper.com
andrew.peck@us.dlapiper.com
colin.steele@us.dlapiper.com

Safraz W. Ishmael
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, Massachusetts 02110-1447
Telephone: (617) 406-6000
safraz.ishmael@us.dlapiper.com

Melissa A. Reinckens
Susan N Acquista
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone: (619) 699-2700
Facsimile: (619) 699-2701
melissa.reinckens@us.dlapiper.com
susan.acquista@us.dlapiper.com

**DLA PIPER LLP (US)**

*/s/ Stephanie E. O'Byrne*
Brian A. Biggs (DE Bar No. 5591)
Stephanie E. O'Byrne (DE Bar No. 4446)
1201 North Market Street Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
brian.biggs@us.dlapiper.com
stephanie.obyrne@us.dlapiper.com

*Attorneys for Defendants*

21

## CERTIFICATE OF SERVICE

I, Stephanie E. O'Byrne, do hereby certify that on the 14th day of April, I caused a true and correct copy of the foregoing *SEALED Opening Brief in Support of Defendants' and Counter-Plaintiffs' Motion to Exclude Expert Testimony* to be served on the counsel of record identified below in the manner indicated:

**VIA EMAIL**
Chad S. Stover
William J. Burton
**BARNES & THORNBURG LLP**
222 Delaware Avenue, Suite 1200
Wilmington, DE 19801 Tel: (302) 300-2474
Fax: (302) 300-3456
cstover@btlaw.com
william.burton@btlaw.com

**VIA EMAIL**
Lawrence E. James
John A. Cullis
Andrea J. Calvert
**BARNES & THORNBURG LLP**
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: (312) 357-1313
lee.james@btlaw.com
jcullis@btlaw.com
acalvert@btlaw.com

**VIA EMAIL**
Roya Rahmanour
**BARNES & THORNBURG LLP**
2029 Century Park East
Suite 300
Los Angeles, CA 90067
Telephone: 310-284-3880
roya.rahmanpour@btlaw.com

**VIA EMAIL**
Kristen Healey Cramer
**GOLO LLC**
700 Prides Crossing
Suite 304
Newark, DE 19713
302-722-4931
kcramer@golo.com

**VIA EMAIL**
Christina M. Baugh (pro hac vice pending)
**BARNES & THORNBURG LLP**
3475 Piedmont Road N.E., Suite 1700
Atlanta, GA 30305-3327
Tel: (404) 264-4026
Christina.baugh@btlaw.com

**VIA EMAIL**
Darren Cahr
**SCHARF BANKS MARMOR LLC**
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Tel: (312) 897-1484
dcahr@scharfbanks.com

**VIA EMAIL**
Amy P. Lally (Admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Tel: (310) 595-9500
alally@sidley.com

**VIA EMAIL**
Rachel L. Hampton (Admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Tel: (312) 853-7000
rhampton@sidley.com

**VIA EMAIL**
Benjamin M. Mundel (Admitted *pro hac vice*)
Jacquelyn E. Fradette (Admitted *pro hac vice*)
Mark Hopson (Admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8000
bmundel@sidley.com
jfradette@sidley.com
mhopson@sidley.com

**VIA EMAIL**
Kristina Martinez (Admitted *pro hac vice*)
David Carpenter (Admitted *pro hac vice*)
**SIDLEY AUSTIN LLP**
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Tel: (213) 896-6000
kmartinez@sidley.com
drcarpenter@sidley.com

*/s/ Stephanie E. O'Byrne*
Stephanie E. O'Byrne (DE Bar No. 4446)