IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GOLO, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>GOLI NUTRITION INC., a Canadian Corp.,<br>GOLI NUTRITION INC., a Delaware Corp.<br>and MICHAEL BITENSKY,<br><br>    Defendants. | Civil Action No. 20-667-RGA |
| GOLI NUTRITION INC., a Canadian Corp.,<br>GOLI NUTRITION INC., a Delaware Corp.<br>and MICHAEL BITENSKY,<br><br>    Counter-Plaintiffs,<br><br>v.<br><br>GOLO, LLC and CHRISTOPHER LUNDIN,<br><br>    Counter-Defendants. | |

**MEMORANDUM ORDER**

The parties filed four summary judgment and *Daubert* motions. (D.I. 510, 511, 515, 517). The motions are fully briefed. I resolved a number of issues based on the briefing. (D.I. 635). I also issued a tentative order excluding at trial any mention of the FDA, FDCA, FDA regulations and definitions, the FTC, the preliminary injunction in this case, the California Task Force, and

the National Advertising Division. (D.I. 634). I thereafter heard about five hours of oral argument on July 13, 2023.[1] I now resolve the remaining issues as set forth below.[2]

### A. Goli's Motion to Exclude Expert Testimony (D.I. 511)

Goli's motion to exclude the testimony of Dr. Jerry Wind is DENIED-IN-PART and GRANTED-IN-PART. Goli argues that Dr. Wind opines on the ultimate legal issue of likelihood of confusion, "usurps the role of the fact-finder" and simply summarizes and regurgitates the evidence and opinions of other experts, employs unrecognized methodologies of "the consumer journey" and "convergent validity," only "offers broad untethered opinions on harm," and opines on intent. (D.I. 513 at 2-8). After oral argument, I read Dr. Wind's 81-page expert report. (D.I. 514-1).

I conclude as follows.

Dr. Wind is prohibited from opining on the ultimate conclusion of likelihood of confusion. (D.I. 514-1 at ¶ 174, Figure 20). *See International Market Brands v. Martin Intern. Corp.*, 882 F. Supp. 2d 809, 814 (W.D. Pa. 2012) ("While expert opinion on the ultimate factual issue of whether or not there exists a likelihood of confusion is inadmissible, expert opinion on the factual factors that develop the ultimate finding on confusion is generally proper and helpful.").[3] His opinion on the balancing of the *Lapp* factors is not helpful to the jury. The jury, if properly instructed, can

---

[1] I cite to the transcript of the oral argument as (Hr. Tr. at ___). The transcript is not yet on the docket.

[2] I repeat some of my rulings from the oral argument. I do not repeat all of them, and the parties should understand that they are bound by my oral rulings (to the extent they are not inconsistent with what is written in this Order).

[3] I understand that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). Here, though, stating an opinion on likelihood of confusion does not help the jury understand the evidence or determine a fact at issue. Fed. R. Evid. 702(a).

balance the *Lapp* factors. The underlying concepts are not difficult, other than possibly for the survey evidence, which will be explained by the survey experts. Dr. Wind may testify on subsidiary factual questions that go to the ultimate question of confusion. Dr. Wind's discussion of the consumer journey would be a helpful framework for the jury. Goli is not challenging Dr. Wind's qualifications as a marketing expert and the consumer journey is an accepted methodology in marketing.[4]

Dr. Wind's convergent validity analysis,[5] on the other hand, does usurp the role of the jury to the extent he uses the convergent validity methodology to bolster his conclusions about the meaning of the evidence. Thus, any reference to the convergent validity methodology is EXCLUDED.

Dr. Wind's opinions on harm are unquantified. Nevertheless, Dr. Wind does tie his opinions to the evidence and opines on specific types of harm GOLO has suffered. (D.I. 514-1 at ¶¶ 158-66). His expertise in explaining the harms arising from the use of the Goli mark would be helpful to the jury.

Dr. Wind's opinions on intent are inadmissible. In his report, Dr. Wind likens trademark infringement to "identity theft" in at least two places. (D.I. 514-1 at ¶¶ 12(a), 42). No witness, expert or not, ought to be opining on intent or comparing trademark infringement to a crime. Thus, the sentences in Dr. Wind's report analogizing trademark infringement to identity theft and any testimony based on it are EXCLUDED.

---

[4] Sections of Dr. Wind's report simply summarize the opinions of three of GOLO's other experts. (*See* D.I. 514-1 at 26-28 (DeRosia); at 33-35 (Finegan); and 49-51 (Butler)). If the other experts testify at trial, which is what I expect, Dr. Wind's summation of their reports is going to be excluded as redundant.

[5] "Convergent validity" appears to be an academic way of saying the weight of the evidence. It is up to the jury to weigh the evidence. At oral argument, GOLO conceded that it did not need "convergent validity" analysis for the opinions Dr. Wind was offering. (Hr. Tr. at 99:20-101:2).

Goli's motion to exclude the testimony of Timothy Calkins (D.I. 511) is GRANTED. After reading the briefing, hearing oral argument (Hr. Tr. at 121:7-143:12), and reading Mr. Calkins' 47-page expert report (D.I. 514-4), I will exclude Mr. Calkins' opinions on the following basis.

Let me first summarize Mr. Calkins' report. The first 28 pages of the report consist of general background information. The second portion of the report calculates the number of impressions and amount spent on marketing. The key paragraph is paragraph 64, which is the transition between the two portions of the report. There, Mr. Calkins summarily states, "I assumed that GOLO would need to generate a single impression to repair the harm caused by each allegedly infringing impression Goli generated." (D.I. 514-4 at ¶ 64). He offers no further support as to what the basis for the assumption is.[6]

Goli argues that Mr. Calkins should be excluded because he has never done a corrective advertising campaign, assumes that all Goli impressions are misimpressions resulting in a 100% confusion rate, uses a draft presentation to determine the number of impressions, and offers no basis for why each misimpression requires one corrective impression. (D.I. 513 at 8-12).

I consider these arguments in view of relevant caselaw. The Lanham Act provides for two remedies following a finding of liability for infringement. The most commonly applied remedy is injunctive relief pursuant to Section 34, which provides that "courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C.

---

[6] Professor Wind, Plaintiff's well-qualified marketing expert, offers a similarly cursory opinion. "GOLO should launch an extensive corrective advertising campaign to correct and undo the confusion cause[d] by Goli's use of that brand name and the harm it caused to GOLO." (D.I. 514-1 at ¶ 168).

§ 1116(a); *see also A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 207–08 (3d Cir. 1999). Monetary damages (including costs) can be awarded pursuant to Section 35, which states in pertinent part:

> (a) When a violation of any right of the registrant of a mark ... shall have been established ... the plaintiff shall be entitled ... subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just.... Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a). "Courts do not automatically award profits, granting them only in light of equitable considerations." *A & H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 167 F. Supp. 2d 770, 801 (E.D. Pa. 2001).

The purpose of corrective advertising is to repair any damage the infringer may have caused to the mark. *See, e.g., Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 506 (7th Cir. 1992).

Courts have issued corrective advertising injunctions as a remedy under the Lanham Act. *See Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 264-65 (2d Cir. 2014). In *A & H Sportswear*, the District Court issued an injunction requiring a disclaimer and noted that the disclaimer would eliminate the need for prospective corrective advertising damages. *A & H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 967 F. Supp. 1457, 1479 (E.D. Pa. 1997); *see also id.* at 1471 (Compared to a broader injunction, "relief in the form of a disclaimer is the more likely candidate

for correcting any consumer misperceptions as to the source of the parties' products and repairing damage to Plaintiffs' reputation and goodwill."). On appeal, the Third Circuit declined to comment on the District Court's issuance of an injunction requiring a disclaimer but noted that some cases have used a similar remedy. *A & H Sportswear,* 166 F.3d at 208.

Corrective advertising in the form of damages is also an available remedy but is not awarded where the trademark holder has not demonstrated actual damages and where the alleged infringer has not acted in bad faith. *See A & H Sportswear,* 166 F.3d at 209 (citing *A & H Sportswear*, 967 F. Supp. at 1478); *see also Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219, 1233 (D.Colo.1976) (awarding corrective advertising where defendant's conduct was "wanton and reckless" and damages had been established with reasonable certainty), *aff'd as modified*, 561 F.2d 1365 (10th Cir.1977). GOLO specifically seeks prospective corrective advertising damages, which courts have only awarded on occasion. *PBM Prod., Inc. v. Mead Johnson & Co.*, 174 F. Supp. 2d 417, 420 (E.D. Va. 2001) ("[T]here have only been a few false advertising case[s] where a federal court granted prospective corrective advertising expenditures."). Because corrective advertising must be tied to the injury suffered and repair the plaintiff's business reputation and goodwill, it is more difficult to quantify the measure of damages compared to strictly pecuniary harms such as lost profits. *First Act Inc. v. Brook Mays Music Co.*, 429 F. Supp. 2d 429, 438 (D. Mass. 2006). Here, it does not appear that GOLO can demonstrate any actual damages, *see infra* p.13 n.15, to support prospective corrective advertising damages. Mr. Calkins' opinions about the cost of a corrective advertising campaign are entirely speculative. There is no assertion that GOLO has done any corrective advertising to date. The total description

of the future corrective advertising campaign is that it is a "corrective advertising" campaign.[7] It is left to the imagination as to what that might involve.[8] Neither Mr. Calkins nor GOLO refer to any academic or other studies as to what such a campaign would require. Mr. Calkins also does not consider the impact of other possible forms of relief if GOLO is successful on liability, such as cancellation of the Goli marks, the use of disclaimers, or any other possible components of injunctive relief.

The fact that Mr. Calkins has not formulated a corrective advertising campaign before and has not done so here would not be fatal had someone else done so. But no one has. The fact that there has been no corrective advertising so far is not necessarily fatal either,[9] though, of course, any corrective advertising done to date would involve a known campaign with actual out-of-pocket expenses.[10] Mr. Calkins' calculation that 100% of Goli impressions are misimpressions is in support of Plaintiff's theory that every use of the name Goli is a misimpression. Whether every use of the name in advertising is a misimpression is disputed and goes to the weight of Mr. Calkins' testimony. The number of Goli impressions comes from a draft presentation; it is therefore an estimate. But that is also not a reason to exclude Mr. Calkins' testimony as the draft presentation is a reasonable basis for approximating the number of impressions and was likely the best evidence GOLO had available to it.

---

[7] Dr. Wind's report adds a word to the description—it should be "an extensive corrective advertising campaign." (D.I. 514-1 at ¶ 168).

[8] Indeed, the "corrective advertising" campaign is so nebulous that GOLO would never have to actually spend any of the corrective advertising damages on corrective advertising. *See Zazu Designs*, 979 F.2d at 506.

[9] *See Big O Tire Dealers*, 561 F.2d at 1374-75.

[10] Presumably, that is why "corrective advertising damages are usually for costs incurred prior to trial." *Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 740 (D. Del. 2005).

Mr. Calkins' opinion on the number of corrective advertisements necessary to fix a misimpression, however, is unsubstantiated, speculative, and conclusory. In order for an expert opinion to be admissible, it must fit the facts of the case. GOLO cites to *PODS Enterprises, LLC v. U-Haul Int'l, Inc.* to establish that Mr. Calkins' opinion is admissible. 126 F. Supp. 3d 1263 (M.D. Fla. 2015). The expert in *PODS*, however, relied on literature to come up with the calculation that three impressions were necessary to correct a misimpression for his corrective advertising opinion. *Id.* at 1283. Mr. Calkins does not appear to rely on any literature or science for his assumption. Mr. Calkins offers no factual basis for this assumption, and neither does anyone else. His estimation for the cost of the corrective advertising campaign therefore lacks the appropriate foundation.

Thus, Mr. Calkins' report and testimony on corrective advertising is EXCLUDED.

Goli's motion to exclude the testimony of Dr. Alyson Mitchell and Dr. Bruce Isaacson is GRANTED-IN-PART and DENIED-IN-PART. Goli argues that Dr. Mitchell and Dr. Isaacson opine on claims that are outside the scope of the operative complaint (D.I. 124), including weight management claims. (D.I. 513 at 12-15). GOLO stated in its brief that it will not present Sections XI and XII of Dr. Mitchell's report and paragraph 24 of Dr. Isaacson's report as they are outside the scope of the complaint. (D.I. 542 at 14). The motion is GRANTED for those sections of Dr. Mitchell's and Dr. Isaacson's reports. Section VIII and paragraphs 80-102 of Dr. Mitchell's report and paragraphs 22-23 of Dr. Isaacson's report discuss the falsity of Goli's claims that Goli's gummies provide weight management. I find that the operative complaint sufficiently pleads the falsity of Goli's claims that its products contribute to weight management. Thus, the opinions are not outside the scope of the complaint, and the motion to exclude those sections of the reports is DENIED.

Goli's motion to exclude the testimony of Dr. Isaacson is DENIED. Goli argues that Dr. Isaacson's surveys lack fit and are unreliable because he was involved in coding responses which introduced bias and he did not use the correct universe of respondents. (D.I. 513 at 16-18). It does not seem as though Dr. Isaacson was directly coding responses, but rather supervising his staff, which is not a reason to exclude his testimony.[11] (D.I. 542 at 17). Similarly, a challenge to the survey population is also not a reason to exclude Dr. Isaacson's testimony. Both of Goli's arguments go to weight and Dr. Isaacson can be cross-examined on his survey methodology.

Goli's motion to exclude the rebuttal testimony of Sarah Butler is DENIED. Goli argues that the Butler rebuttal report is untimely and responds to Hal Poret's 2020 surveys that are no longer relevant since they have been superseded by his 2023 report. (D.I. 513 at 18-19). During the preliminary injunction stage in 2020, GOLO proffered Mr. Steckel as an expert who rebutted Poret's 2020 report. Mr. Steckel is no longer an expert witness for GOLO, and Ms. Butler essentially adopted and expanded upon Mr. Steckel's report. (Hr. Tr. at 173:8-24). Goli had the opportunity to depose Ms. Butler and ask her about her rebuttal report, as well as her opinions on Poret's updated 2023 report. (Hr. Tr. at 175:7-176:5). The Butler rebuttal report is neither untimely nor unfairly prejudicial to Goli.

### B. GOLO's Motion to Exclude Expert Testimony (D.I. 510)

GOLO's motion to exclude the testimony of Keith Ugone is DISMISSED without prejudice to renew. Mr. Ugone's challenged opinions in his opening expert report are primarily regarding the appropriateness of a permanent injunction if Goli's counterclaim is successful.[12]

---

[11] Even if he were coding the responses himself, I think that would simply be a matter for cross-examination and expert witness testimony pointing out the bias issue.

[12] Mr. Ugone wrote two reports. There is no *Daubert* challenge to his rebuttal report. (Hr. Tr. at 180:7-10).

Such testimony will not be presented to a fact finder and may never need to be considered. The parties are to meet and confer as to whether there is any portion of Mr. Ugone's opening report that Goli will seek to use during the trial. (Hr. Tr. at 182:2-24).

GOLO's motion to exclude the testimony of Sameer Somal is DENIED. GOLO argues that Somal is not qualified as a "digital marketing expert," makes "insinuations," "parrots the opinions of counsel," and "lacks a methodology, reliable basis, or sufficient facts." (D.I. 512 at 5-9). After reading the briefing, hearing oral argument, and reading Somal's 32-page expert report (D.I. 521-2), I conclude as follows. Somal is at least minimally qualified by experience to offer the testimony as I describe it below. The "insinuations" (D.I. 512 at 6-7) are likely inadmissible, but that is not a reason to grant the motion to exclude the entire report. The "parrots" argument is likely mooted by Goli's representation that the relevant Goli employee will testify (Hr. Tr. at 193:14-194:5) and by rulings that I have made (i.e., the parties may not reference the preliminary injunction ruling) or will make. As to the last argument, I first describe what I understand Somal's testimony to be. Leaving aside the background information, Somal makes two basic points. One, Goli has greater on-line presence than GOLO, which is not a surprise given the different channels that GOLO (television) and Goli (the internet) use to advertise. Two, some consumers searching for Goli have been directed to GOLO's website because GOLO or its vendors use keywords, both positive and negative, that lead to that outcome. The analysis appears to be adequately supported.

GOLO's motion to exclude the testimony of Drs. Contoreggi and Cheskin is DENIED-IN-PART. GOLO argues that Drs. Contoreggi and Cheskin do not have the relevant expertise to opine on FDA standards, the FDA standards they use are incorrect, the reports impermissibly rely on work from counsel, and their opinions lack reliability because they fail to consider all the evidence. (D.I. 512 at 9-16). Pursuant to my order, Drs. Contoreggi and Cheskin are prohibited from relying

on FDA standards and the FDCA. (D.I. 634). Drs. Contoreggi and Cheskin may testify on their understanding of the studies they analyzed independently of the FDA standards. As to GOLO's remaining arguments, those go to weight and credibility.

GOLO's motion to exclude the testimony of Hal Poret is DENIED. GOLO argues that Mr. Poret's rebuttal report should be excluded because (1) it contains four new surveys that were run prior to GOLO's expert, Ms. Butler's, report but were disclosed after opening reports were due, and (2) the surveys utilize unreliable methodologies. (D.I. 512 at 16-19).

Mr. Poret's rebuttal report was not untimely. The parties agreed in the Scheduling Order that the opening expert disclosure deadline was for the party who has the burden of proof and the rebuttal deadline was to "contradict or rebut the evidence" on the same issue. (D.I. 96 at 2). Mr. Poret conducted surveys on the likelihood of confusion. Goli does not have the burden of proof on likelihood of confusion; GOLO does. Mr. Poret's report was therefore timely disclosed in rebuttal. The fact that Mr. Poret conducted his surveys prior to GOLO serving its opening report does not mean that Mr. Poret's surveys cannot contradict or rebut the Butler report. Goli deposed Ms. Butler, who offered critiques of Mr. Poret's surveys. (Hr. Tr. at 19:22-20:6). GOLO could have asked, and perhaps did ask, its own expert about her views on Mr. Poret's work. Any request for Ms. Butler to serve a reply report is DENIED. Turning to the surveys themselves, Mr. Poret conducted *Eveready* and *Squirt* surveys, both of which are accepted methodologies for consumer surveys.[13] GOLO's expert, Ms. Butler, also conducted *Eveready* and *Squirt* surveys using a

---

[13] During the hearing, I asked Goli to submit supplemental authority regarding Mr. Poret's *Squirt* surveys (Hr. Tr. at 25:24-26:19). Goli's letter identifies various cases that support Mr. Poret's use of a variation of the *Squirt* survey methodology called a "Sequential Line Up." (D.I. 638). GOLO's letter in response reiterates the same arguments it made during the hearing. (D.I. 653).

different set of stimuli than Mr. Poret. Whether Mr. Poret's surveys or Ms. Butler's surveys used a more appropriate stimulus goes to weight, not admissibility.

GOLO's motion to exclude the testimony of Sean O'Keefe is DISMISSED as moot. GOLO argues Mr. O'Keefe testified in his deposition that he is developing a new method for analyzing acetic acid in gummy products. Since he has not developed it yet, it is not disclosed in his expert report and was not relied upon in forming his opinions. (D.I. 512 at 20). Goli stated at the July 13th hearing that it will not serve a supplemental report and Mr. O'Keefe will not testify on this new testing method at trial. (Hr. Tr. at 198:2-15). There is no actual dispute about Mr. O'Keefe.

C.     **Goli's Motion for Summary Judgment (D.I. 517)**

Goli's motion for summary judgment on GOLO's false advertising claims (D.I. 124, Counts IV, VI) is DENIED. Goli argues that GOLO cannot prove that the challenged advertising claims are literally false or that they are causally linked to any harm GOLO has suffered. (D.I. 518 at 11-16). Based on the briefing, I am not persuaded that there are no disputed facts as to whether Goli's claims are literally false, have a tendency to mislead, and whether GOLO has been injured by the challenged advertisements.

Goli's motion for summary judgment on GOLO's lack of evidence that it suffered any harm is DENIED-IN-PART and GRANTED-IN-PART. Goli argues that GOLO lacks evidence to show that any false advertising or trademark infringement caused any harm to GOLO. (D.I. 518 at 16-18). Based on the briefing, I believe there is a genuine dispute on damages as to GOLO's trademark infringement claim, and GOLO may present its evidence of harm at trial.[14] While I have

---

[14] Goli submitted a notice of subsequent authority (D.I. 641) citing to *CareDx, Inc. v. Natera, Inc.*, No. 19-662-CFC, 2023 WL 4561059 (D. Del. July 17, 2023). This case is not germane to the specific issues in dispute here.

excluded Mr. Calkins' testimony on corrective advertising, Dr. Wind may testify to the types of harm he describes in his report, to wit, loss of control of its brand, loss of distinctiveness, tarnishment, and loss of sales. (D.I. 514-1 at ¶¶ 158-166). As to the false advertising claims, GOLO stated at the July 13th hearing that it was seeking both corrective advertising and lost profits. (Hr. Tr. 137:19-138:3). Goli argued that GOLO never pled lost profits for its false advertising claims. (Hr. Tr. at 138:19-24). I have excluded Mr. Calkins' testimony on corrective advertising, and after reviewing the operative complaint (D.I. 124), I agree that GOLO has not pled lost profits for its false advertising claims.[15] (*Id.* at 92-94). Thus, GOLO cannot prove any damages for its false advertising claims.

Goli's motion for summary judgment on Counterclaim I is DENIED. Goli argues that there is no genuine dispute that two of GOLO's advertisements are literally false. (D.I. 518 at 18-20). The first statement relates to weight loss ranges which GOLO states is moot because it no longer makes those claims on its website. (D.I. 545 at 19-20). Goli responds that GOLO has removed and reinstated these statements before, and I should enter a permanent injunction now against GOLO. (D.I. 561 at 10). I am unpersuaded that GOLO has mooted this issue. The statements are currently off the website, but what is to prevent GOLO from putting them back on at some point in the future, as GOLO has apparently done before? Further, GOLO argues that the weight loss ranges merely reflect a recommendation for the amount of time a consumer should take the Release pills, and the statements are not intended to convey that the Release pills will result in a certain amount of weight loss over time. (D.I. 545 at 20). Thus, there remains a genuine dispute as to the meaning conveyed by the weight loss ranges. The second statement relates to whether GOLO's Release

---

[15] It is undisputed that no expert has tried to calculate lost sales and therefore has also not tried to calculate lost profits. (Hr. Tr. at 135:20-136:12).

pills are "clinically proven" to deliver specific results. There is a genuine dispute among the experts about whether the pills are "clinically proven," and the effect of the disclaimers related to the referenced studies.

### D. GOLO's Motion for Partial Summary Judgment (D.I. 515)

GOLO's motion for partial summary judgment on the "implied disease" claim counterclaims is DENIED. GOLO argues that Goli asserts a claim premised on an alleged violation of the Food, Drug, and Cosmetic Act (FDCA) that is preempted and that there is no independent basis for Goli's claim. (D.I. 516 at 12-19). Goli agrees that the FDCA does not grant a private right of action, but asserts that its claims are independent of the FDCA. (D.I. 547 at 12-18). I agree with Goli that its counterclaims are not preempted because they can be presented without reference to the FDA and FDCA. I have already excluded any testimony from Drs. Contoreggi and Cheskin on FDA standards and the FDCA. Goli may present evidence on false advertising without reliance on the FDA and the FDCA.

### E. Tentative Rulings

Regarding my tentative order (D.I. 634), neither party objects to excluding any mention of the preliminary injunction and thus it is EXCLUDED. As to any mention of the FDA, FDCA, and FDA regulations, Goli argues that it is necessary for its fact witnesses to testify that it complied with FDA regulations. (Hr. Tr. at 147:5-152:16). GOLO argues that allowing Goli to allow its fact witnesses to testify to their belief that Goli complied with FDA regulations presents a "sword and shield problem." (Hr. Tr at 152:18-155:14). The parties are to meet and confer and submit a letter to the Court in advance of the pretrial conference regarding this issue. Regarding the National Advertising Division (NAD) and California Task Force (CTF) investigations, any mention of the NAD, the CTF, or the California District Attorney is EXCLUDED. Goli's statements to NAD are

not excluded to the extent they do not make any mention (or are redacted so that they do not make any mention) of the investigation or the NAD. Based on GOLO's representations that its statements to the CTF are confidential negotiations (Hr. Tr. at 200:8-17), GOLO's statements to the CTF are EXCLUDED. Fed. R. Evid. 408. The NAD and CTF rulings are subject to review at trial should I conclude the opposing party opens the door.[16]

IT IS SO ORDERED this 3rd day of August 2023.

/s/ Richard G. Andrews
United States District Judge

---

[16] My impression at argument was that neither side needs the communications with the NAD and the CTF because the same or similar statements have been made elsewhere. (*See* Hr. Tr. at 203:7-205:11). Bringing in these other proceedings would, at a minimum, cause extreme and unfair prejudice, and must be avoided absent an exceptional reason. *See* Fed. R. Evid. 403.